UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO
ALBUQUERQUE DIVISION

GENERAL PROTECHT GROUP, INC.,
f/k/a ZHEJIANG DONGZHENG
ELECTRICAL, CO.; G-TECHT
GLOBAL CORPORATION;
SECURELECTRIC CORPORATION;
WAREHOUSE-
LIGHTING.COM LLC; CENTRAL
PURCHASING, LLC; and HARBOR
FREIGHT TOOLS USA, INC.,

                        Plaintiffs,

                vs.

LEVITON MANUFACTURING CO.,
INC.,

                  Defendant.

Civ. No. _____

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs General Protecht Group, Inc. (f/k/a Zhejiang Dongzheng Electrical Co.);

G- Techt Global Corporation; SecurElectric Corporation; Warehouse-Lighting.com LLC;

Central Purchasing, LLC; and Harbor Freight Tools USA, Inc. (collectively "Plaintiffs")

allege as follows:

### SUMMARY OF THE ACTION AND REQUESTED RELIEF

1.     This case arises out of the patent laws of the United States based on

Leviton's allegations that Plaintiff General Protecht Group's ("GPG's") GFCI products

infringe two of Leviton's patents, United States Patent Nos. 7,463,124 (the " '124

patent") and 7,764,151 (the " '151 patent"). Leviton has recently filed patent

infringement actions in the United States District Court for the Northern District of

California and before the United States International Trade Commission ("ITC"),

alleging that Plaintiffs, which include GPG and certain of GPG's customers, have

infringed the '124 and '151 patents. Leviton's claims of patent infringement, however,

are subject to an exclusive forum selection clause under the parties' prior Settlement

Agreement, which the parties executed in October 2007 to settle a group of related patent

infringement actions previously pending in this Court. The exclusive forum selection

clause in the Settlement Agreement requires that Leviton assert its claims of infringement

in this Court. Plaintiffs request temporary, preliminary, and permanent injunctive relief

to enjoin Leviton to dismiss its claims in the recently filed civil actions in the Northern

District of California and before the ITC.

2.      Plaintiffs, which include certain of GPG's customers, seek a declaratory

judgment that they do not infringe any claim of the '124 and '151 patents, because

Plaintiffs received an express or implied license arising out of the Settlement Agreement

with Leviton; because Plaintiffs do not infringe any valid claim of the asserted patents;

because the '124 and '151 patents are invalid and/or unenforceable; and because Leviton

is estopped under the doctrine of prosecution laches from asserting the '124 and '151

patents.

3.      Plaintiffs also seek recovery of damages for Leviton's breach of the

Settlement Agreement.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338,

2201 & 2202, as this action arises under the patent laws of the United States because

Plaintiffs seek a declaratory judgment that Plaintiffs do not infringe any claim of the '124 and '151 patents.

5.      The Court has supplemental jurisdiction over the state claims asserted in this action under 28 U.S.C. § 1367.  The federal and state claims alleged herein are based on a common nucleus of operative facts.  Judicial economy, convenience, and fairness to the parties will result if this Court assumes and exercises jurisdiction over the state claims.

6.      The Court has personal jurisdiction over Leviton because, upon information and belief, Leviton has ongoing and systematic contacts with this district, including transacting business in this district on a regular basis; has initiated its own actions in this district, including the cases that were settled in the prior Settlement Agreement; and has consented to exclusive venue and jurisdiction in this district for purposes of adjudicating the issues raised herein.

7.      This Court is proper venue under 28 U.S.C. § 1391 and under the terms of the parties' prior Settlement Agreement.

## THE PARTIES

8.      Plaintiff General Protecht Group, Inc. (f/k/a Zhejiang Dongzheng Electrical Co.) ("GPG") is incorporated under the laws of the People's Republic of China, with a principal place of business in China.

9.      Plaintiff G-Techt Global Corporation ("G-Techt") is incorporated under the laws of the State of Georgia, with a principal place of business in Georgia.

10.     Plaintiff SecurElectric Corporation ("SecurElectric") is a corporation organized under the laws of the State of Missouri, with a principal place of business in Georgia.

11.     Plaintiff Warehouse-Lighting.com LLC ("Warehouse-Lighting") is a limited liability company organized under the laws of the State of Wisconsin, with a principal place of business in Wisconsin.

12.     Plaintiff Central Purchasing, LLC ("Central Purchasing") is a limited liability company organized under the laws of the State of California, with a principal place of business in California.

13.     Plaintiff Harbor Freight Tools USA, Inc. ("Harbor Freight") is incorporated under the laws of the State of Delaware, with a principal place of business in California.

14.     Upon information and belief, Defendant Leviton Manufacturing Co., Inc. ("Leviton") is incorporated under the laws of the State of Delaware, with a principal place of business at 201 North Service Road, Melville, New York 11747.

## FACTUAL ALLEGATIONS

### A.     Introduction

15.     Plaintiff GPG and Defendant Leviton manufacture and sell competing GFCI products.  Both companies manufacture their products in China.

16.     "GFCI" is an acronym for a ground fault circuit interrupter, an example of which is the ubiquitous bathroom electrical outlet receptacle that has a trip indicator and a reset button.  GFCIs are safety devices intended to reduce risk of electrocution in areas susceptible to increased risks of electrical hazard, such as wet areas.

17.     GPG markets and sells its GFCI products to U.S. distributors, who include among other customers Plaintiffs G-Techt, SecurElectric, Warehouse Lighting, Central Purchasing, and Harbor Freight.

**B.     Leviton's Prior Patent Infringement Actions**

18.     In 2004 and 2005, Leviton asserted claims of patent infringement against GPG, Harbor Freight, Central Purchasing and another defendant in three actions ultimately pending in the District Court for the District of New Mexico, Civil Action Nos. 04-424 JB/LFG, 04-1295 MCA/ACT (the "2004 Actions") and No. 05-0301 JB/DJS (collectively the "Prior Actions").[1]

19.     Leviton's complaints in the Prior Actions alleged that GPG, Harbor Freight, and Central Purchasing infringed U.S. Patent Nos. 6,246,558 (the " '558 patent") and 6,864,766 (the " '766 patent"), both assigned to Leviton, through their sale of GFCIs manufactured by GPG.  The '558 and '766 patents are attached as Exhibits A and B.

20.     GPG and the other defendants in the Prior Actions denied infringement and asserted counterclaims of non-infringement, invalidity and unenforceability.

21.     During the course of the Prior Actions, this Court issued *Markman* Orders interpreting the claims of the '766 patent and the '558 patents.

22.     In light of the *Markman* Order in the 2004 Actions, the Court granted summary judgment of non-infringement in favor of GPG, Harbor Freight, and the other defendant in those Actions with respect to all of the asserted claims of the '558 Patent.

23.     Leviton filed a notice of appeal in the 2004 Actions regarding the issues adjudicated in the summary judgment motion.

---

[1] Central Purchasing was not a party to either of the 2004 Actions.

24.     In connection with the Defendants' successful motion for summary judgment in the 2004 Actions, this Court issued an order striking an untimely expert affidavit filed by Leviton in opposition to that motion and ordered Leviton to pay defendants their costs and attorneys fees.  This was in addition to the Court sanctioning Leviton for putting forward an unprepared and uncooperative Rule 30(b)(6) witness.

**C.     The Settlement Agreement**

25.     The parties to the Prior Actions thereafter entered into a comprehensive, confidential written settlement agreement to resolve their disputes on or about October 24, 2007 (the "Settlement Agreement").

26.     The terms of the Settlement Agreement were confidential, and therefore the full document has not been filed herewith.  Under the Settlement Agreement, Leviton granted certain patent rights to GPG, Harbor Freight, Central Purchasing, and their customers.  These patent rights, included, but were not limited to, a license to the '588 and '766 patents covering the GFCI products accused of infringement, in the Prior Actions, as well as a certain GFCI product that was confidentially identified to Leviton as being an "anticipated" future product to be made by GPG (collectively, the "Licensed Products").

27.     The Settlement Agreement also required that any disputes "relating to or arising out of" the Settlement Agreement "shall be prosecuted exclusively in the United States District Court for the District of New Mexico."

28.     Following execution of the Settlement Agreement, GPG, Central Purchasing, and Harbor Freight marketed and sold in the United States one or more of the Licensed Products.

**D.      Leviton Secures Two "New" Patents:  The '124 And '151 Patents**

29.      Over a year after the parties entered the Settlement Agreement, on December 9, 2008, U.S. Patent No. 7,463,124 (the " '124 patent") issued; the '124 patent is assigned on its face to Leviton.  The '124 patent is attached as Exhibit C.

30.      Over two years after the Agreement was executed, on July 27, 2010, U.S. Patent No. 7,764,151 (the " '151 patent") issued; the '151 patent is also assigned on its face to Leviton.  The '151 patent is attached as Exhibit D.

31.      Leviton's "new" '124 patent issued from a continuation application of the '766 patent.

32.      Leviton's "new" '151 patent issued from a continuation application of the application that issued as the '124 patent and as noted above the '124 patent issued from a continuation application of the '766 patent.

33.      The '124 and '151 patents purportedly have specifications that are substantively identical to the specifications for the '558 and '766 patents; the title, abstract, specification, preferred embodiments, and figures for Leviton's "new" '124 and '151 patents are purportedly substantively identical to the title, abstract, specification, preferred embodiments, and figures for Leviton's previously asserted '766 and '558 patents that the Settlement Agreement licensed to GPG and its distributors and customers, including Harbor Freight and Central Purchasing.

34.      One or more of the claims of the '124 and '151 patents appear to be broader in scope than the claims of the '766 and '558 patent.

**E.    Leviton Filed New Civil Actions In The ITC And In California Accusing The Licensed Products Of Infringing Leviton's "New" Patents**

35.    On about September 3, 2010, Leviton filed a patent infringement complaint with the ITC under § 337 of the Tariff Act of 1930, against Plaintiffs and other unrelated respondents styled *In Re Certain Ground Fault Circuit Interrupters and Products Containing Same*, Inv. No. 337-TA-739 (the "2010 ITC Action").  Leviton contemporaneously filed a patent infringement complaint against Plaintiffs and other unrelated defendants in the Northern District of California styled *Leviton Manufacturing Co., Inc. v. Fujian Hongan Electric Co. Ltd. et. al.*, Case No. 3:10-cv-03961-WHA (the "2010 California Action").

36.    The complaint in each of the 2010 California and ITC Actions asserts that GPG's products licensed under the Settlement Agreement (*i.e.*, the Licensed Products and GFCIs manufactured and distributed by GPG that are identical in all material respects to the Licensed Products) and now imported and sold by the Plaintiffs herein infringe the '124 and '151 patents.

37.    Leviton takes the position in the 2010 California and ITC Actions that it is not possible for GPG, Harbor Freight, Central Processing, or their customers to manufacture, import, sell, or offer for sale the GFCI products previously licensed by Leviton under the Settlement Agreement because those products allegedly infringe Leviton's '124 and '151 patents.

38.    Plaintiffs are now being forced to litigate on an expedited basis before the ITC, causing them substantial damages and irreparable injury to their relationships among each other and with their respective customers.

39.     Leviton's 2010 California Action has been stayed, but if and when the stay is lifted, Plaintiffs will also suffer further damages and further irreparable injury because they will be forced to further litigate Leviton's claims in that venue.

## COUNT I

### DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF BASED ON EXCLUSIVE FORUM SELECTION PROVISION

40.     Paragraphs 1 through 39 of the Complaint are incorporated herein by reference, as if set forth in full.

41.     An actual controversy exists among the parties with respect to whether the exclusive forum selection clause of the Settlement Agreement requires Leviton to bring before this Court all of its claims for infringement of the '124 and '151 patents relating to the Licensed Products in this Court.

42.     Plaintiffs are entitled to a declaratory judgment that the Settlement Agreement contains a mandatory and exclusive forum selection clause that requires all disputes arising from or relating to the Settlement Agreement to be litigated in the District Court for the District of New Mexico.

43.     Plaintiffs are entitled to a declaratory judgment that Leviton's patent infringement claims against Plaintiffs asserting infringement of the '124 and '151 patents in the 2010 California and ITC Actions are subject to the forum selection clause of the Settlement Agreement and therefore must be litigated in this Court.

44.     Plaintiffs are entitled to a temporary, preliminary, and permanent injunction enjoining Leviton from prosecuting its claims of infringement of the '124 and '151 patents against these Plaintiffs relating to the Licensed Products in any venue other

than the United States District Court for the District of New Mexico and requiring

Leviton to dismiss the 2010 California and ITC Actions as to these Plaintiffs.

COUNT II

<u>DECLARATORY JUDGMENT OF NON-INFRINGEMENT<br>BASED ON LICENSE AND/OR ESTOPPEL</u>

45.     Paragraphs 1 through 44 of the Complaint are incorporated herein by

reference, as if set forth in full.

46.     The Plaintiffs do not infringe any claim of the '124 and '151 patents

because the Settlement Agreement extended an express or implied license to Plaintiffs to

these patents.

47.     The Plaintiffs do not infringe any claim of the '124 and '151 patents

because Leviton is legally or equitably estopped from asserting infringement of these

patents against Plaintiffs for at least the Licensed Products.

48.     An actual controversy exists among the parties with respect to whether the

Settlement Agreement extended to Plaintiffs an express or implied license to the '124 and

'151 patents.

49.     An actual controversy exists among the parties with respect to whether

Leviton is legally or equitably estopped from asserting infringement of the '124 and '151

patents.

50.     Plaintiffs are entitled to a declaratory judgment that Plaintiffs do not

infringe any claim of the '124 or '151 patents because Plaintiffs received an express or

implied license under the Settlement Agreement to the '124 and '151 patents.

51.     Plaintiffs are entitled to a declaratory judgment that Plaintiffs do not

infringe any claim of the '124 or '151 patents because Leviton is legally and/or equitably

estopped from asserting its patent infringement claims against Plaintiffs based on alleged infringement of the '124 and '151 patents.

## COUNT III

## DECLARATORY JUDGMENT OF NON-INFRINGEMENT
## OF THE '124 PATENT

52.     Paragraphs 1 through 51 of the Complaint are incorporated herein by reference, as if set forth in full.

53.     Plaintiffs have not infringed any valid and enforceable claim of the '124 patent.

54.     An actual controversy exists among the parties with respect to whether Plaintiffs have infringed any valid and enforceable claim of the '124 patent.

55.     Plaintiffs are entitled to a declaratory judgment that they have not infringed any valid and enforceable claim of the '124 patent.

## COUNT IV

## DECLARATORY JUDGMENT OF NON-INFRINGEMENT
## OF THE '151 PATENT

56.     Paragraphs 1 through 55 of the Complaint are incorporated herein by reference, as if set forth in full.

57.     Plaintiffs have not infringed any valid and enforceable claim of the '151 patent.

58.     An actual controversy exists among the parties with respect to whether Plaintiffs have infringed any valid and enforceable claim of the '151 patent.

59.     Plaintiffs are entitled to a declaratory judgment that they have not infringed any valid and enforceable claim of the '151 patent.

## COUNT V

## DECLARATORY JUDGMENT OF INVALIDITY
## OF THE '124 PATENT

60.     Paragraphs 1 through 59 of the Complaint are incorporated herein by reference, as if set forth in full.

61.     The '124 patent is invalid under one or more of 35 U.S.C. §§ 101, 102, 103, and 112.

62.     An actual controversy exists among the parties with respect to whether the '124 patent is invalid under one or more of 35 U.S.C. §§ 101, 102, 103, and 112.

63.     Plaintiffs are entitled to a declaratory judgment that the '124 patent is invalid under one or more of 35 U.S.C. §§ 101, 102, 103, and 112.

## COUNT VI

## DECLARATORY JUDGMENT OF INVALIDITY
## OF THE '151 PATENT

64.     Paragraphs 1 through 63 of the Complaint are incorporated herein by reference, as if set forth in full.

65.     The '151 patent is invalid under one or more of 35 U.S.C. §§ 101, 102, 103, and 112.

66.     An actual controversy exists among the parties with respect to whether the '151 patent is invalid under one or more of 35 U.S.C. §§ 101, 102, 103, and 112.

67.     Plaintiffs are entitled to a declaratory judgment that the '151 patent is invalid under one or more of 35 U.S.C. §§ 101, 102, 103, and 112.

## COUNT VII

### DECLARATORY JUDGMENT OF INVALIDITY OF THE '124 AND '151 PATENTS DUE TO PROSECUTION LACHES

68.     Paragraphs 1 through 67 of the Complaint are incorporated herein by reference, as if set forth in full.

69.     The '124 and '151 patents are invalid under the doctrine of prosecution laches.

70.     An actual controversy exists among the parties with respect to whether the '124 and '151 patents are invalid under the doctrine of prosecution laches because Leviton has asserted that Plaintiffs infringe the '124 and '151 patents in the 2010 California and ITC Actions.

71.     Plaintiffs are entitled to a declaratory judgment that the '124 and '151 patents are invalid under the doctrine of prosecution laches.

### COUNT VIII

### DECLARATORY JUDGMENT OF INEQUITABLE CONDUCT WITH RESPECT TO THE '124 AND '151 PATENTS

72.     Paragraphs 1 through 71 of the Complaint are incorporated herein by reference, as if set forth in full.

73.     The '766 patent issued from U.S. Application No. 10/827,093, filed on April 19, 2004 (the " '093 application).  The '093 application lists Paul J. Sutton, Barry Magidoff, and Claude Narcisse, among others, as the attorneys responsible for preparing and prosecuting the '093 application before the U.S. Patent and Trademark Office ("PTO").  Nicholas L. DiSalvo and William R. Ziegler are listed as the inventors of the '766 patent.

74.     More than a year before filing the '093 application, Leviton filed U.S. Provisional Application No. 60/444,469 (the " '469 provisional application"). The '469 provisional application lists Mr. Sutton as the attorney responsible for preparing and filing the '469 provisional application in the PTO.

75.     The '469 provisional application was entitled "Circuit Interrupting Device and System Utilizing Bridge Contact Mechanism and Reset Lockout," and was filed on February 3, 2003.

76.     On October 22, 2003, Leviton filed U.S. Patent Application Serial No. 10/690,776 (the "Germain application"), which claims priority to the '469 provisional application. The Germain application lists Mr. Sutton, Mr. Magidoff, and Mr. Narcisse as the attorneys responsible for the preparing and prosecuting the Germain application before the PTO.

77.     The Germain application is entitled "Circuit Interrupting Device and System Utilizing Bridge Contact Mechanism and Reset Lockout," and names Frantz Germain, James Richter, David Herzfeld, Armando Calixto, David Chan, and Stephen Stewart as inventors.

78.     Neither Mr. DiSalvo nor Mr. Ziegler, the inventors of the '766 patent, are named as inventors of the subject matter of the Germain application.

79.     The '093 application and the Germain application have no common inventors and neither application claims priority to the other.

80.     On information and belief, in preparing the '093 application and the Petition to Make Special on the basis of actual infringement, Leviton and/or its attorneys,

copied the claim language of the Germain application and added it to the '093

application.

81.   Claim 31 of the Germain application recites:

A circuit interrupting device comprising:

a first electrical conductor capable of being electrically connected to a source of electricity;

a second electrical conductor capable of conducting electrical current to a load when electrically connected to said first electrical conductor;

a third electrical conductor capable of being electrically connected to user accessible plugs and/or receptacles where the first, second and third electrical conductors are electrically isolated from each other;

**a movable bridge** electrically connected to the first electrical conductor, said at least one movable bridge capable of electrically connecting the first, second and third electrical conductors to each other;

a circuit interrupting portion configured to cause electrical discontinuity between said first, second and third electrical conductors upon the occurrence of a predetermined condition; and

a reset portion configured to reestablish electrical continuity between the first, second and third electrical conductors after said predetermined condition occurs.

82.   Claim 1of the '766 patent recites:

A circuit interrupting device comprising:

a first electrical conductor capable of being electrically connected to a source of electricity;

a second electrical conductor capable of conducting electrical current to a load when electrically connected to said first electrical conductor;

a third electrical conductor capable of being electrically connected to user accessible plugs and/or receptacles where the first, second and third electrical conductors are electrically isolated from each other;

**at least one movable bridge** electrically connected to the first electrical conductor, said at least one movable bridge capable of

electrically connecting the first, second and third electrical conductors to each other;

a circuit interrupting portion configured to cause electrical discontinuity between said first, second and third electrical conductors upon the occurrence of a predetermined condition; and

a reset portion configured to reestablish electrical continuity between the first, second and third electrical conductors after said predetermined condition occurs.

83.    Claim 31 of the Germain application differs from claim 1 of the '766 patent only by the substitution of "at least one movable bridge" in place of "a pair of movable bridges."

84.    Claim 42 of the Germain application recites:

A circuit interrupting device comprising:

a first pair of terminals capable of being electrically connected to a source of electricity;

a second pair of terminals capable of conducting electrical current to a load when electrically connected to said first pair of terminals;

a third pair of terminals capable of being electrically connected to user accessible plugs and/or receptacles where the first, second and third pair of terminals are electrically isolated from each other;

**a pair of movable bridges** electrically connected to the first pair of terminals, said at least one movable bridge being capable of electrically connecting the first, second and third pairs of terminals to each other;

a circuit interrupting portion configured to cause electrical discontinuity between said first, second and third pairs of terminals upon the occurrence of a predetermined condition; and

a reset portion configured to reestablish electrical continuity between the first, second and third pairs of terminals after said predetermined condition occurs.

85.    Claim 11 of the '766 patent recites:

A circuit interrupting device comprising:

a first pair of terminals capable of being electrically connected to a source of electricity;

a second pair of terminals capable of conducting electrical current to a load when electrically connected to said first pair of terminals;

a third pair of terminals capable of being electrically connected to user accessible plugs and/or receptacles where the first, second and third pair of terminals are electrically isolated from each other;

**at least one movable bridge** electrically connected to the first pair of terminals, said at least one movable bridge being capable of electrically connecting the first, second and third pairs of terminals to each other;

a circuit interrupting portion configured to cause electrical discontinuity between said first, second and third pairs of terminals upon the occurrence of a predetermined condition; and

a reset portion configured to reestablish electrical continuity between the first, second and third pairs of terminals after said predetermined condition occurs.

86.     Claim 42 of the Germain application differs from claim 11 of the '766 patent only by the substitution of "at least one movable bridge" in place of "a pair of movable bridges."

87.     The dependent claims of the '766 patent have virtually identical language to dependent claims in the Germain application.

88.     The claims of the Germain application and the '766 patent cover the same patentable invention, or an obvious variant of each other.

89.     At no time during the prosecution of the '093 application did any of Leviton's attorneys, including Mr. Magidoff, Mr. Sutton, and Mr. Narcisse; the named inventors of the '093 application, Mr. DiSalvo and Mr. Ziegler; or anyone at Leviton inform the PTO that the '093 application and the Germain application contained claims of identical scope and/or almost verbatim language.

90.     The Manual of Patent Examining Procedure § 2001.06(b) requires that information regarding related applications must be brought to the attention of the examiner.

91.     Under the Federal Circuit's "reasonable examiner" standard, an application is "highly material" to the prosecution of another if it could have conceivably served as the basis of a double patenting rejection.

92.     The Germain application could have served as the basis for a double patenting rejection in view of the identical claim language and thus was highly material to the examination of the '766 patent.

93.     On information and belief, Leviton's attorneys, including Mr. Magidoff, Mr. Sutton, and Mr. Narcisse, and/or the named inventors of the '766 patent, Mr. DiSalvo and Mr. Ziegler, intentionally did not disclose to the PTO the Germain application for the purpose of deceiving the PTO as to the origins of the claim language, the late date of invention of the claimed subject matter, the lack of support to claim priority to earlier applications, and the lack of a written description to support the claim language, in order to obtain improper allowance of the '766 patent.

94.     The actions and/or inactions described above constituted inequitable conduct during prosecution of the '093 application.

95.     Leviton's inequitable conduct during prosecution of the '093 application was not cured during prosecution of the applications that issued as the '124 or '151 patents.  Leviton's inequitable conduct during prosecution of the '093 application infects the '124 and '151 patents rendering them unenforceable.

96.     The '124 patent issued from U.S. Application No. 10/977,929, filed on October 28, 2004; the '124 patent claims priority to the '093 application, which ultimately issued as the '766 patent.  Mr. Sutton, Mr. Magidoff, and Mr. Narcisse are listed as the attorneys responsible for preparing and prosecuting before the PTO the application that issued as the '124 patent.  Mr. DiSalvo and Mr. Ziegler are listed as the inventors of the '151 patent.

97.     The '151 patent issued from U.S. Application No. 12/176,735, filed on July 21, 2008; the '151 patent claims priority to the '093 application, which ultimately issued as the '766 patent.  George Likourezos is listed as the attorney responsible for preparing and prosecuting before the PTO the application that issued as the '151 patent. Mr. DiSalvo and Mr. Ziegler are listed as the inventors of the '151 patent.

98.     Claim 8 of the '151 patent recites:

A circuit interrupting device comprising:

a first electrical conductor capable of being electrically connected to a source of electricity;

a second electrical conductor capable of conducting electrical current to a load when electrically connected to said first electrical conductor;

a third electrical conductor capable of being electrically connected to user accessible plugs and/or receptacles where the first, second and third electrical conductors are electrically isolated from each other;

at least one movable bridge electrically connected to the first electrical conductor, said at least one movable bridge capable of electrically connecting the first, second and third electrical conductors to each other;

**a circuit interrupter** configured to cause electrical discontinuity between said first, second and third electrical conductors upon the occurrence of a predetermined condition;

and **a reset portion, including a reset button, a spring which biases the button outwardly, and a plurality of contacts**, configured to reestablish electrical continuity between the first, second and third electrical conductors after said predetermined condition occurs.

99.     Claim 31 of the Germain application differs from claim 8 of the '151 patent only by the substitution of "a circuit interrupter" for "a circuit interrupting portion" and the substitution of "a reset portion, including a reset button, a spring which biases the button outwardly, and a plurality of contacts" in place of "a reset portion."

100.    The claims of the Germain application and the '151 patent cover the same patentable invention, or an obvious variant of each other.

101.    At no time during the prosecution of the '151 patent application did any of Leviton's attorneys, including Mr. Likourezos; the named inventors of the '151 patent, Mr. DiSalvo and Mr. Ziegler; or anyone at Leviton inform the PTO that the application for the '151 patent and the Germain application contained claims of identical scope and/or almost verbatim language.

102.    The Germain application could have served as the basis for a double patenting rejection in view of the identical claim language and thus was highly material to the examination of the '151 patent application.

103.    On information and belief, Leviton's attorneys, including Mr. Likourezos, and/or the named inventors of the '151 patent, Mr. DiSalvo and Mr. Ziegler, intentionally did not disclose to the PTO that the language of Claim 31 of the Germain application did not materially differ from the language of Claim 8 of the '151 patent for the purpose of deceiving the PTO as to the origins of the claim language, the late date of invention of the claimed subject matter, the lack of support to claim priority to earlier applications, and

the lack of a written description to support the claim language, in order to obtain improper allowance of the '151 patent.

104.    During the prosecution '151 patent application on or about November 9, 2009, Leviton's attorney Mr. Likourezos informed the PTO that the '766 patent had been found unenforceable due to inequitable conduct by a court because Leviton's attorneys, Mr. Sutton, Mr. Magidoff, and Mr. Narcisse, failed to disclose the Germain application during the prosecution '766 patent application.  But Leviton's attorney Mr. Likourezos wrongly advised the PTO that the inequitable conduct committed during the prosecution of the '766 patent was irrelevant for purposes of prosecution of the '151 patent application because the '151 patent application did not claim priority to the '766 patent.

105.    Later during the prosecution of the '151 patent application on or about March 12, 2010, Leviton's attorney Mr. Likourezos filed an amendment to the '151 patent application specifically claiming priority to the '766 patent.  This new assertion of priority was directly contrary to Mr. Likourezos's prior representation to the PTO that no such priority claim to the '766 patent existed.  After making this inconsistent priority claim in the '151 patent application, Mr. Likourezos never informed the PTO that his prior representation concerning the alleged lack of materiality of the '766 patent was in fact false.

106.    Furthermore, the PTO issued its notice of allowance only three days after Leviton's attorney Mr. Likourezos filed the amendment asserting the new claim of priority in the '151 patent application.  Leviton's attorney Mr. Likourezos therefore knew that the PTO did not have sufficient time to evaluate the materiality of the new priority claim and still Leviton's attorney Mr. Likourezos did not bring to the PTO's attention

that his prior statement was false regarding the alleged lack of materiality of the inequitable conduct found in the '766 patent.

107.   On information and belief, Leviton's attorney Mr. Likourezos actions and/or inactions described above were deliberately and intentionally calculated to mislead the PTO into believing that the inequitable conduct committed during the prosecution of the '766 patent application was not material to the prosecution of the '151 patent application.

108.   The actions and/or inactions describe above constituted inequitable conduct during the prosecution of the applications that issued as the '124 and '151 patents.

109.   An actual controversy exists among the parties with respect to whether the '124 and '151 patents are unenforceable.

110.   Plaintiffs are entitled to a declaratory judgment that the '124 and '151 patents are unenforceable.

**COUNT IX**

**<u>EXCEPTIONAL CASE</u>**

111.   Paragraphs 1 through 110 of the Complaint are incorporated herein by reference, as if set forth in full.

112.   Plaintiffs request a determination that this case is exceptional under 35 U.S.C. § 285 and an order awarding them recovery of their attorney fees and expenses of litigation.

## COUNT X

## BREACH OF CONTRACT

113.    Paragraphs 1 through 112 of the Complaint are incorporated herein by reference, as if set forth in full.

114.    Leviton breached the Settlement Agreement by filing the 2010 California and ITC Actions, alleging patent infringement of the '124 and '151 patents by Plaintiffs.

115.    Plaintiffs are entitled to compensatory and consequential damages in an amount to be proven at trial as a result of Leviton's breaches of the contract, as well as pre- and post- judgment interest, attorney fees and costs.

116.    In undertaking the wrongful acts described herein, Leviton breached its duty of good faith and fair dealing causing damages to Plaintiffs in an amount to be proven at trial, and warranting the imposition of punitive damages as permitted by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request the following relief:

(a)    A declaratory judgment, under 28 U.S.C. §§ 2201 and 2202, as follows:

(1)    that the issues and claims raised in this complaint and the claims of patent infringement asserted against Plaintiffs in Leviton's 2010 California and ITC Actions must be litigated exclusively in the United States District Court for the District of New Mexico;

(2)    that Plaintiffs, and their customers, officers, directors, shareholders, members, employees, subsidiaries, and affiliates, have a license under the Settlement Agreement to import, use, make, offer for sale, or sell the Licensed Products, and that the license provides a complete defense to Leviton's claims of patent

infringement of the '124 and '151 patents asserted in Leviton's 2010 California and ITC Actions; and

        (3)     that, if and to the extent that the Licensed Products are not covered by a license, the '124 and '151 patents are invalid and unenforceable and/or that the Licensed Products do not infringe any valid claim of either of the '124 or '151 patents;

    (b)     An order granting injunctive relief to Plaintiff and temporarily, preliminarily, and permanently enjoining (i) Leviton, and (ii) Leviton's officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with anyone described in the sections (i) or (ii), to (A) take whatever actions are necessary to secure the dismissal in the 2010 California and ITC Actions of all claims or allegations based on patent infringement of the '124 or '151 patents against Plaintiffs, or any other patents expressly or impliedly licensed under the Settlement Agreement, and (B) from maintaining, or taking any steps in furtherance of prosecuting or maintaining either of those actions against Plaintiffs;

    (c)     An order awarding compensatory, consequential, and punitive damages to Plaintiff;

    (d)     An order awarding attorney fees, expenses of litigation, and costs to Plaintiffs;

    (e)     An order awarding pre- and post- judgment interest to Plaintiff; and

    (f)     For such further equitable or other relief as the Court deems just and proper.

Dated: October 28, 2010

Respectfully submitted,

Roger Michener
New Mexico Bar No. 9008
MICHENER LAW FIRM, LLC
P.O. Box 400
Placitas, New Mexico  87043-0400

*Attorney for Plaintiffs*

William F. Long
Ann G. Fort
SUTHERLAND ASBILL & BRENNAN LLP
999 Peachtree Street, N.E.
Atlanta, Georgia 30309-3996
Phone (404) 853-8000
Facsimile (404) 853-8806

*Attorneys for Plaintiffs*
  *General Protecht Group, Inc.;*
  *G-Techt Global Corporation;*
  *SecurElectric Corporation; and*
  *Warehouse-Lighting.com LLC*

Mark J. Rosenberg, Esq.
SILLS CUMMIS & GROSS P.C.
One Rockefeller Plaza
New York, New York 10020
Tel. (212) 500-1563
Fax (212) 643-6500

*Attorney for Plaintiffs*
  *Central Purchasing, LLC.; and*
  *Harbor Freight Tools USA, Inc.*