# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

GENERAL PROTECHT GROUP, INC.,
f/k/a ZHEJIANG DONGZHENG
ELECTRICAL, CO.; G-TECHT
GLOBAL CORPORATION;
SECURELECTRIC CORPORATION;
WAREHOUSE-
LIGHTING.COM LLC; CENTRAL
PURCHASING, LLC; and HARBOR
FREIGHT TOOLS USA, INC.,

        Plaintiffs,

vs.                                      No. CIV 10-1020 JB/LFG

LEVITON MANUFACTURING CO.,
INC.,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) GPG's Motion to Dismiss Leviton's Trade

Secret Misappropriation Counterclaim for Lack of Subject Matter Jurisdiction, filed January 10,

2011 (Doc. 73)("GPG's MTD"); (ii) Defendant Leviton Manufacturing Co., Inc.'s Motion to

Dismiss Patent Claims and Counterclaims, filed October 11, 2011 (Doc. 144)("Leviton's MTD");

(iii) the Plaintiffs' Motion for Summary Judgment that Leviton Breached Its Implied License, filed

March 8, 2012 (Doc. 171)("Plaintiffs' MSJ"); and (iv) Leviton's Cross-Motion for Summary

Judgment and, Alternatively, to Strike Plaintiffs' Motion for Summary Judgment on Plaintiffs'

Breach of Implied License Claim, filed March 26, 2012 (Doc. 184)("Leviton's MSJ").[1]  The Court

---

[1]The Court has not held a hearing on the Plaintiffs' MSJ and Leviton's MSJ.  Given the disposition of Leviton's MTD, however, it is appropriate for the Court to dispose of each of these motions for summary judgment.

held hearings on February 16, 2012, and on March 21, 2012.  The Court will grant GPG's MTD, and will grant in part and deny in part Leviton's MTD consistent with the parties' agreement at the February 16, 2012, hearing.  Based on the lack of allegations in Defendant Leviton Manufacturing Co.'s pleadings that indicate there is any common nucleus of operative fact between the patent dispute in this case and the trade-secret dispute, the Court concludes that it cannot properly exercise supplemental jurisdiction over Leviton Manufacturing's trade-secret claim -- Counterclaim III.  As to Leviton's MTD, the Court will accept the parties' agreements to dismiss Leviton Manufacturing's patent-infringement counterclaims -- Counterclaims I and II -- with prejudice.  The Court will accept the parties' agreement to dismiss Counts III through VIII.  The Court concludes that, following dismissal with prejudice of Counterclaims I and II for patent infringement, Count II is moot based on the lack of an actual controversy.  Because no federal claims remain in this case, the Court will decline to exercise supplemental jurisdiction over the remaining state-law claims -- Count I and Count X.  Because Count II is moot, and because the Court is declining to exercise jurisdiction over Count I, the Court will deny the Plaintiffs' MSJ and Leviton's MSJ as moot.  Because the Court believes that bringing this case to a conclusion is in the Plaintiffs' best interests to permit them to enforce, if necessary, the dismissal with prejudice under the doctrines of res judicata and collateral estoppel, the Court will proceed to enter final judgment on the claims asserted in this case.  The Court retains jurisdiction over the request for attorney's fees under 35 U.S.C. § 285 as collateral to the merits of the case.

## **FACTUAL BACKGROUND**

Plaintiff General Protecht Group, Inc. ("GPG")[2] and Leviton Manufacturing manufacture

---

[2]GPG was formerly known as Zhejiang Dongzheng Electrical Co., but has changed its name.  See Memorandum Opinion and Order at 3 n.2, filed November 30, 2010 (Doc. 41).  To avoid

and sell competing ground fault circuit interrupter ("GFCI") products.  <u>Leviton Mfg. Co. v. Nicor,</u> <u>Inc.</u>, 557 F.Supp.2d 1231, 1235 (D.N.M. 2007)(Browning, J.); <u>Leviton Mfg. Co. v. Nicor, Inc.</u>, No. 04-0424, 2006 WL 4079129, at *1 (D.N.M. May 23, 2006)(Browning, J.); Memorandum Opinion and Order at 3, filed November 30, 2010 (Doc. 41)("MOO").  GFCIs are safety devices that reduce the risk of electrocution.  <u>See</u> <u>Leviton Mfg. Co. v. Nicor, Inc.</u>, 2006 WL 4079129, at *1.  GPG markets and sells GFCI products to United States distributors, including Plaintiffs Harbor Freight Tools USA, Inc., Central Purchasing, LLC, G-Techt Global Corp., SecurElectric Corp., and Warehouse Lighting.com LLC.  <u>See</u> <u>Leviton Mfg. Co. v. Zhejiang Dongzheng Elec. Co.</u>,  506 F.Supp.2d 646, 648-49 (D.N.M. 2007)(Browning, J.); <u>Leviton Mfg. Co. v. Nicor, Inc.</u>, 557 F.Supp.2d at 1235; MOO at 3.  GPG manufactures its GFCI products in China.  <u>See</u> <u>Leviton Mfg.</u> <u>Co. v. Zhejiang Dongzheng Elec. Co.</u>, 506 F.Supp.2d at 648-49; MOO at 3.

### 1.    **The Prior Actions.**

In 2004 and 2005, Leviton Manufacturing asserted claims of patent infringement of U.S. Patent Nos. 6,246,558 ("the '558 Patent") and 6,864,766 ("the '766 patent") in the District Court for the District of New Mexico.  <u>See</u> MOO at 3.  In these actions, Leviton Manufacturing alleged that GPG, Harbor Freight, Central Purchasing, and Nicor Inc. infringed Leviton Manufacturing's '558 patent and '766 patent through their sale of GFCIs that GPG manufactured.  <u>See</u> MOO at 4. On March 5, 2007, the Court made a <u>Markman</u>[3] ruling, which adopted GPG, Harbor Freight, Nicor, and Central Purchasing's construction of the terms "movable bridge," "predetermined condition,"

_____

confusion, the Court will refer to the company as GPG.

[3]<u>Markman v. Westview Instruments, Inc.</u>, 517 U.S. 370, 372 (1996)(holding "that the construction of a patent, including terms of art within its claim, is exclusively within the province of the court" as opposed to a jury).

and "reset portion." Leviton Mfg. Co. v. Zhejiang Dongzheng Elec. Co., 506 F.Supp.2d at 648.  On

July 10, 2007, the Court granted summary judgment of non-infringement to GPG, Harbor Freight,

and Nicor with respect to Claim 3 of the '558 patent.  See Leviton Mfg. Co. v. Nicor, Inc., 557

F.Supp.2d at 1235, 1250-51.

       2.       **The Confidential Settlement Agreement.**

       In October 2007, Leviton Manufacturing, GPG, Harbor Freight, Nicor, and Central

Purchasing, LLC entered into a Confidential Settlement Agreement ("CSA") to resolve the patent-

infringement actions pending in the Court.  MOO at 4.  The CSA included a covenant not to sue.

The covenant stated:

> 2.1    Leviton . . . hereby covenants not to sue (1) Defendants, their officers,
> directors, shareholders, members, employees, subsidiaries, or affiliates for
> alleged infringement of the '558 and/or '766 patents based on the Dongzheng
> products currently accused of infringement in the '558 and/or '766 actions; and
> and (2) Defendants, their officers, directors, shareholders, members,
> employees, subsidiaries, or affiliates for alleged infringement of the '558
> patent and/or the '766 patent with respect to an anticipated future new GFCI
> product that Defendant Dongzheng has indicated its intent to market in the
> U.S. in the future . . . .
>
> 2.2    The dismissals and covenant not to sue by Leviton in Article 2.1 shall also
> apply to Defendants' customers of the Dongzheng Products including, but
> not limited to, Interline Brands, Inc., provided such customers do not seek to
> invalidate any claim of the '558 or '766 patents or seek to have those patents
> declared invalid or unenforceable through any presently existing or future
> court action or administrative filing.

CSA §§ 2.1, 2.2, at 4-5, filed November 2, 2010 (Doc. 8-1).

       The CSA also contained a section regarding the District of New Mexico's '766 Markman

order.

> The parties will jointly request that the Court vacate its '766 Order in . . . the Court's
> Memorandum Opinion and Order dated March 5, 2007, by submitting a joint motion
> and proposed form of Order to the Court . . . .  However, Leviton agrees not to
> challenge any proposed claim construction of a '766 patent claim that is reflected in

-4-

the '766 Markman Order, which any of the Defendants, their officers, directors, shareholders, members, employees, subsidiaries, affiliates (or their customers) may propose in connection with any claim of infringement of a '766 patent claim. Defendants and their officers, directors, shareholders, members, employees, subsidiaries, affiliates (or their customers) are not precluded from proposing said claim construction in any action or proceeding asserting infringement of any patent related to the '766 patent, although Leviton may challenge such proposed claim construction.  Leviton and defendants agree that neither the fact of the Court's decision to vacate or not vacate its '766 Markman Order, nor the fact that the parties requested that the Court vacate its '766 Markman Order, can be used by a party to this Agreement to support or challenge a proposed construction of a claim related to the '766 patent.

CSA § 4.1, at 8-9.

The CSA also contained a section entitled "Governing Law/Venue."  CSA § 11.2, at 11. This section states:  "Any dispute between the Parties relating to or arising out of this [CSA] shall be prosecuted exclusively in the United States District Court for the District of New Mexico.  The Parties consent to the venue and jurisdiction of such court for this purpose."  CSA § 11.2, at 11.

### 3.      Leviton Manufacturing's '124 and '151 Patents.

After the CSA, Leviton Manufacturing secured two new patents -- U.S. Patent Nos. 7,463,124 ("the '124 patent") and 7,764,151 ("the '151 patent").  MOO at 5.  On December 9, 2008, the '124 patent issued from application no. 10/977,929 ("the '929 application"), which was filed on October 28, 2004.  See MOO at 5-6.  The '151 patent issued on July 27, 2010 from application no. 12/176,735 ("the '735 application"), which was filed on July 21, 2008.  MOO at 6.  The '929 application was filed as a continuation[4] of the '766 patent.  See MOO at 6.  The '735 application was

---

[4]A continuation is:

a second application for the same invention claimed in a prior nonprovisional application and filed before the original prior application becomes abandoned.  A continuation application may be filed under 37 C.F.R. § 1.53(b) or under 37 C.F.R. § 1.53(d) as a CPA, Continued Prosecution Application.  A continuation carries forward the disclosure from a previous application but adds nothing new, merely

filed as a continuation of the '929 application.  See MOO at 6.

4.    **Actions Asserting Infringement of Leviton Manufacturing's '124 and '151 Patents.**

In September 2010, Leviton Manufacturing filed patent-infringement complaints with the United States International Trade Commission ("ITC") and in the United States District Court for the Northern District of California, alleging that GPG and the following Defendants infringed Leviton Manufacturing's '124 and '151 patents: (i) G-Techt Global Corporation; (ii) SecurElectric Corporation; (iii) Warehouse Lighting.com, LLC; (iv) Central Purchasing; (v) Harbor Freight Tools USA, Inc.; (vi) and other entities not involved in this litigation.  MOO at 6.[5]  In its complaint filed in the ITC, Leviton Manufacturing asserts that six of GPG's GFCI products infringe the '124 and '151 patents.  See MOO at 6-7; Declaration of Huaiyin Song ¶¶ 8-11, at 4-5 (dated October 29, 2010), filed November 2, 2010 (Doc. 8)("Song Decl."); Amended Complaint Under Section 337 of the Tariff Act of 1930, as Amended at i-ii, 1-9, 26-46, filed November 3, 2010 (Doc. 10-1).  Leviton Manufacturing's complaint in the Northern District of California alleges identical claims of patent

---

providing a second opportunity to have the same disclosure reviewed for patentability.  Thus, to enjoy the status of a continuation, the later application must have a disclosure common with the previous application, be copending with it, and clearly refer back to it.  Except as provided in 37 C.F.R. § 1.45, the applicant in the continuation must be the same as in the prior application. The disclosure presented in the continuation must be the same as that of the original application, that is, the continuation should not include anything which would constitute new matter if inserted in the original application.  At any time during the prosecution of the earlier nonprovisional application, the applicant may file a continuation in order to introduce a new set of claims and to establish a right to further examination by the Patent and Trademark Office.

3 J. Mills, D. Reiley & R. Highley, Patent Law Fundamentals § 15:8 (2d ed. 2004).

[5]Both the ITC proceeding and the proceeding in the Northern District of California also contain allegations regarding another patent, U.S. Patent No. 7,737,809, which have not been asserted against the Plaintiffs in this action.  See MOO at 6.5.

infringement as Leviton Manufacturing's complaint filed in the ITC.  See MOO at 7; Song Decl. ¶ 7, at 4; Leviton Manufacturing Co.'s First Amended Complaint for Patent Infringement and Trade Secret Misappropriation, filed November 3, 2010 (Doc. 10-2).  The Plaintiffs assert that the CSA licensed the six GFCI products that Leviton Manufacturing asserts infringe the '124 and '151 patents.  See MOO at 7; Song Decl. ¶¶ 8-11, at 4-5.  Huaiyin Song, the manager of GPG's Department of Technology Development and Product Manufacturing, states that, of the GPG GFCI products that Leviton Manufacturing currently accuses the Plaintiffs of infringing, one product is a product that Leviton Manufacturing accused of infringement in the previous litigation in the District of New Mexico, and the other five products are the "anticipated future new" product identified in § 2.1 of the CSA.  MOO at 7; Song Decl. ¶¶ 8-11, at 4-5.  Leviton Manufacturing asserts that the ITC Investigation, is not limited to the six identified GPG products, because Leviton Manufacturing has a right, through discovery in the ITC Investigation to assert that additional products infringe its patents.  See MOO at 7.

## PROCEDURAL BACKGROUND

On October 28, 2010, the Plaintiffs filed their Complaint for Declaratory and Injunctive Relief.  See Doc. 1 ("Complaint").  They assert ten Counts against Leviton Manufacturing: (i) Count I - Declaratory Judgment and Injunctive Relief Based on Exclusive Forum Selection Provision; (ii) Count II - Declaratory Judgment of Non-Infringement Based on License and/or Estoppel; (iii) Declaratory Judgment of Non-Infringement of the '124 Patent; (iv) Declaratory Judgment of Non-Infringement of the '151 Patent; (v) Declaratory Judgment of Invalidity of the '124 Patent; (vi) Declaratory Judgment of Invalidity of the '151 Patent; (vii) Count VII - Declaratory Judgment of Invalidity of the '124 and '151 Patents due to Prosecution Laches; (viii) Count VIII - Declaratory Judgment of Inequitable Conduct with Respect to the '124 and '151 Patents; (ix) Count IX -

Exceptional Case; and (x) Count X - Breach of Contract.  See Complaint at 9-23.  Leviton Manufacturing has asserted three counterclaims against the Plaintiffs: (i) Counterclaim I - Infringement of U.S. Patent No. 7,463,124; (ii) Counterclaim II - Infringement of U.S. Patent No. 7,764,151; and (iii) Counterclaim III - Trade Secret Misappropriation Against General Protecht Under Georgia Code § 10-1-761, et seq.  See Defendant Leviton Manufacturing Co. Inc.'s Answer, Defenses, and Counterclaims to Complaint for Declaratory and Injunctive Relief at 19-25, filed December 15, 2010 (Doc. 59)("Answer").  Leviton Manufacturing asserts Counterclaim III against GPG only.  See Answer ¶¶ 162-73, at 22-24.

On the Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction, filed November 2, 2010 (Doc. 5), the Court issued its MOO, granting the Plaintiffs' request for a preliminary injunction and enjoining Leviton Manufacturing to take all actions necessary to secure dismissal of all claims of patent infringement asserted against the Plaintiffs in the ITC action and the action in the Northern District of California.  MOO at 46.  The Court denied the Plaintiffs' request for a temporary restraining order compelling Leviton Manufacturing to consent to the Plaintiffs' motion to stay the ITC action or, if Leviton Manufacturing's objection to the motion to stay has already been lodged, to withdraw that objection.  See MOO at 46.  On December 8, 2010, Leviton Manufacturing filed a Notice of Appeal, appealing the Court's grant of the preliminary injunction to the United States Court of Appeals for the Federal Circuit.  See Notice of Appeal at 1, filed December 8, 2010 (Doc. 53).  On July 8, 2011, the Federal Circuit issued a Judgment affirming the Court's grant of the preliminary injunction.  See Judgment at 1, filed October 5, 2011 (Doc. 146).

In GPG's MTD, GPG seeks dismissal of Leviton Manufacturing's trade-secret claim for lack of subject-matter jurisdiction.  See Doc. 73.  GPG asserts that there is no common nucleus of fact

between the federal causes of action relating to patent infringement, over which the Court has original subject-matter jurisdiction under 28 U.S.C. § 1331, and the trade-secret claim asserted against it.  See Memorandum in Support of GPG's Motion to Dismiss Leviton's Trade Secret Misappropriation Counterclaim for Lack of Subject Matter Jurisdiction at 1-3, filed January 10, 2011 (Doc. 74)("Memorandum in Support of GPG's MTD").  It notes that the Court has only supplemental jurisdiction over the trade-secret claim.  See MOO at 1-3.  GPG asserts that diversity jurisdiction does not exist in this case, because some Plaintiffs and Defendants share citizenship, thus destroying complete diversity.  See Memorandum in Support of GPG's MTD at 3.  GPG asserts that the dispute underlying the trade-secret claim is not so related as to be part of the same case or controversy as the dispute underlying the patent claims.  See Memorandum in Support of GPG's MTD at 3-4.  GPG argues that, even if supplemental jurisdiction exists over the trade-secret claim, the Court should decline to exercise supplemental jurisdiction over that claim.  See Memorandum in Support of GPG's MTD at 4-6.

On November 3, 2011, Leviton Manufacturing filed its response to GPG's MTD.  See Leviton's Memorandum of Law in Opposition to GPG's Motion to Dismiss Leviton's Trade Secret Counterclaim for Lack of Subject Matter Jurisdiction (Doc. 150)("Response to GPG's MTD").  It asserts that its trade-secret counterclaim arises out of the same common nucleus of operative fact as the patent dispute.  See Response to GPG's MTD at 1.  It contends that "[t]he trade secret counterclaim involves GPG's efforts to misappropriate Leviton's trade secrets, including those related to ground fault circuit interrupters ('GFCIs'), the same type of products at issue in the patent claims and counterclaims." Response to GPG's MTD at 1.  Leviton Manufacturing notes that "[t]he trade secret misappropriation occurred in 2008, before the ink was dry on the October 2007 Settlement Agreement that forms the basis of the of [sic] GPG's breach of contract claim."

Response to GPG's MTD at 1-2.  Leviton Manufacturing argues that there will be "substantial factual overlap" between the trade-secret claim and the patent claims.  Response to GPG's MTD at 1.  Leviton Manufacturing contends that exercising supplemental jurisdiction over the trade-secret claim is appropriate.  See Response to GPG's MTD at 5-8.  Leviton Manufacturing does not raise any argument that diversity jurisdiction is present over its trade-secret claim.  See Response to GPG's MTD at 1-8; Answer ¶¶ 132-33, at 15.  GPG filed its reply brief on November 21, 2011. See Reply Brief in Support of GPG's Motion to Dismiss Leviton's Trade Secret Misappropriation Counterclaim for Lack of Subject Matter Jurisdiction (Doc. 151).

Leviton Manufacturing filed Leviton's MTD on October 11, 2011.  See Doc. 144.  Leviton Manufacturing asks the Court to enter "an order dismissing its First and Second Counterclaims" for patent infringement with prejudice.  Leviton Manufacturing Co., Inc.'s Memorandum of Law in Support of Its Motion to Dismiss Patent Claims and Counterclaims at 1, 3, filed October 11, 2011 (Doc. 145)("Memorandum in Support of Leviton's MTD").  It argues that "[t]he dismissal of its Patent Counterclaims with prejudice by Leviton coupled with the this [sic] Court's decision, as affirmed by the" Federal Circuit's decision that "Plaintiffs have an implied license to the '124 and '151 patents for the products currently at issue, render moot both the Patent Counterclaims and Patent Claims."  Memorandum in Support of Leviton's MTD at 1-2 (footnote omitted).  It contends that the Court should dismiss Counts II through VIII on the basis of mootness.  See Memorandum in Support of Leviton's MTD at 2-5.  Leviton Manufacturing asserts that, once it has dismissed its patent counterclaims, "there is no longer a 'substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'"  Memorandum in Support of Leviton's MTD at 3-4 (quoting MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 126 (2007)).  It contends that the Federal Circuit has recognized that

"a covenant not to sue already exists" in the parties' earlier settlement agreement and that, thus, the case is now moot.  Memorandum in Support of Leviton's MTD at 4.

On November 3, 2011, the Plaintiffs filed their response to Leviton's MTD.  <u>See</u> Plaintiffs' Response to Leviton's Motion to Dismiss Patent Claims and Counterclaims (Doc. 149)("Response to Leviton's MTD").  The "Plaintiffs agree that Leviton's infringement counterclaims should be dismissed with prejudice."  Response to Leviton's MTD at 1.  They consent to dismissal of Counts III and IV without prejudice.  <u>See</u> Response to Leviton's MTD at 1.  They oppose dismissal of the remaining Counts that they have asserted against Leviton Manufacturing.  <u>See</u> Response to Leviton's MTD at 1.  They assert that, rather than dismiss Count II as moot, the Court should enter judgment in favor of the Plaintiffs on Count II based on the Federal Circuit's finding that the Plaintiffs have an implied license to the '124 and '151 patents for the products described in the parties' settlement agreement.  <u>See</u> Response to Leviton's MTD at 3.  The Plaintiffs recognize, however, that "the Federal Circuit's opinion was technically only affirming this Court's grant of a preliminary injunction."  Response to Leviton's MTD at 3.  They also assert that, even if Leviton Manufacturing dismisses with prejudice its patent-infringement claims, claims asserting that Leviton Manufacturing's patents are unenforceable and/or invalid are not moot.  <u>See</u> Response to Leviton's MTD at 4-5, 9-13.  The Plaintiffs contend that Leviton Manufacturing's argument that a covenant not to sue makes this dispute moot is not persuasive given that "Leviton did not offer a covenant not to sue during the litigation."  Response to Leviton's MTD at 6.  They argue that "[i]nstead there has been an adjudication of non-infringement based on implied license, and it is only the adjudicated finding of non-infringement -- <u>not</u> any voluntary charge of position prior to adjudication -- that prevents Leviton from pursuing its infringement claims against Plaintiffs."  Response to Leviton's MTD at 6-7 (emphasis in original).  The Plaintiffs also argue that "[e]ven if the Court were to agree

with Leviton that Plaintiffs' invalidity and unenforceability claims are moot, the Court retains subject matter jurisdiction to decide Plaintiffs' unenforceability claims based on Plaintiffs' claim for attorneys' fees under § 285."  See Response to Leviton's MTD at 13.

On November 21, 2011, Leviton Manufacturing filed its reply brief to the Response to Leviton's MTD.  See Leviton's Reply to Plaintiffs' Opposition to Leviton's Motion to Dismiss Patent Claims and Counterclaims (Doc. 154)("Reply to Response to Leviton's MTD").  It asserts that, even if the Court can exercise jurisdiction over the remaining patent claims in the Plaintiffs' declaratory judgment action, it should decline to do so.  See Reply to Response to Leviton's MTD at 7-10.  On November 30, 2011, the Plaintiffs filed a surreply brief.  See Plaintiffs' Surreply Brief in Opposition to Leviton's Motion to Dismiss Patent Claims and Counterclaims (Doc. 158-1)("Surreply").  The Plaintiffs argue that the Federal Circuit's "finding of implied license renders the infringement issue fully litigated."  Surreply at 2.

On January 18, 2012, Harbor Freight and Central Purchasing informed the Court that, in contradiction to their earlier position, they now consent "to the dismissal of Counts III-VIII as they apply to" them "so long as the dismissal is" without prejudice.  Letter to the Court from Mark J. Rosenberg at 1 (dated January 18, 2012), filed January 17, 2012 (Doc. 165).  On February 14, 2012, the remaining Plaintiffs, besides Harbor Freight and Central Purchasing, informed the Court that they are "willing to consent to dismissal of Counts III through VIII" if dismissal is without prejudice.  Letter to the Court from William F. Long at 1 (dated February 14, 2012), filed February 14, 2012 (Doc. 168).

At the hearing on February 16, 2012, the Court inquired whether considerations of fairness and efficiency have any bearing on its determination whether it has supplemental jurisdiction over the trade-secret claim.   See Transcript of Hearing at 13:11-15 (taken February 16,

-12-

2012)(Court)("Feb. 16, 2012 Tr.").[6]  Leviton Manufacturing acknowledged that the Court must first decide whether it has supplemental jurisdiction over the claim and then can decide whether it will choose to exercise supplemental jurisdiction over that claim.  See Feb. 16, 2012 Tr. at 13:16-19 (Shatzer).  Leviton Manufacturing asserted that its trade-secret claim shares the most facts in common with the patent-infringement claims it has asserted against the Plaintiffs and the Plaintiffs' claims of non-infringement.  See Feb. 16, 2012 Tr. at 14:19-15:2 (Court, Shatzer).  The Plaintiffs acknowledged that the Court is competent to handle the trade-secret claim, but emphasized that the Court has no jurisdiction to hear that claim.  See Feb. 16, 2012 Tr. at 15:25-16:7 (Long).  The Plaintiffs asserted that the alleged misappropriation of the trade secrets took place at least in part in Georgia and that the alleged injury occurred in New York.  See Feb. 16, 2012 Tr. at 16:9-18 (Court, Long).  Leviton Manufacturing noted that it would have the same expert testify regarding damages for each of its counterclaims.  See Feb. 16, 2012 Tr. at 21:9-22:16 (Shatzer).

During a discussion of Leviton's MTD, Leviton Manufacturing asserted that the Court should not state whether the dismissal of the claims to which the parties have agreed to dismissal is with or without prejudice but should state instead that it will dismiss the claims for lack of subject-matter jurisdiction based on the lack of a case or controversy.  See Feb. 16, 2012 Tr. at 26:10-22 (Shatzer).  The Plaintiffs noted that, rather than agreeing with Leviton Manufacturing that the claims they have asserted in Counts III through VIII are moot, they have chosen not to oppose Leviton's MTD seeking dismissal of those claims as long as dismissal is without prejudice.  See Feb. 16, 2012 Tr. at 28:8-10 (Long).  The Plaintiffs noted that, because a dismissal for lack of subject-matter jurisdiction is, under rule 41(b) of the Federal Rules of Civil Procedure, without prejudice,

---

[6]The Court's citations to the transcripts of the hearings refer to the court reporter's original, unedited versions.  Any final transcripts may contain slightly different page and/or line numbers.

the Court does not need to specify whether the dismissal is with or without prejudice. <u>See</u> Feb. 16,
2012 Tr. at 28:16-20 (Long). The Court inquired whether the parties would find it acceptable for
the Court to dismiss these claims asserted in Counts III through VIII for lack of subject-matter
jurisdiction without mentioning whether the dismissal is with or without prejudice. <u>See</u> Feb. 16,
2012 Tr. at 30:3-5 (Court). Leviton Manufacturing asserted that it was amenable to this proposal.
<u>See</u> Feb. 16, 2012 Tr. at 30:6-7 (Shatzer). The Plaintiffs noted that this proposal was acceptable
given that the dismissal would ultimately be without prejudice, but noted that they are having trouble
understanding why Leviton Manufacturing will not agree to the order stating the dismissal is without
prejudice. <u>See</u> Feb. 16, 2012 Tr. at 30:8-12 (Long); <u>id.</u> at 31:20-32:3 (Long).

Leviton Manufacturing asserted that entering judgment in favor of the Plaintiffs on Count
II is not appropriate given that the Federal Circuit's decision was a ruling on an appeal of a
preliminary junction as opposed to a dispositive motion. <u>See</u> Feb. 16, 2012 Tr. at 32:13-33:18
(Shatzer). Leviton Manufacturing argued that, instead, dismissal of Count II as moot is appropriate
in light of its agreement to dismiss its patent counterclaims with prejudice. <u>See</u> Feb. 16, 2012 Tr.
at 32:13-33:18 (Shatzer). The Plaintiffs explained that they had previously believed, based on
Leviton Manufacturing's briefing, that it had conceded that entry of judgment in the Plaintiffs' favor
was appropriate for Count II. <u>See</u> Feb. 16, 2012 Tr. at 35:9-20 (Long). The Plaintiffs related that,
in light of Leviton Manufacturing's clarification of its position at the hearing, they planned to file
a motion for summary judgment if the Court denies Leviton's MTD. <u>See</u> Feb. 16, 2012 Tr. at 35:9-
20 (Long). The Plaintiffs asserted that they read certain statements in Leviton Manufacturing's
briefing as admissions that the Plaintiffs have an implied license regarding the '124 and '151
patents, but noted that those statements may not have been intended as admissions. <u>See</u> Feb. 16,
2012 Tr. at 36:6-25 (Long).

-14-

Leviton Manufacturing asserted that Count II, a claim seeking a declaration of non-infringement, is now moot given that Leviton Manufacturing has agreed to dismiss with prejudice its infringement claims based on those same patents. See Feb. 16, 2012 Tr. at 37:9-38:7 (Shatzer). Leviton Manufacturing noted that, to the extent the question whether the Plaintiffs have an implied license regarding the '124 and '151 patents is a question of law, it does not intend to contest that the Plaintiffs have an implied license in light of the Federal Circuit's opinion ruling on the preliminary injunction. See Feb. 16, 2012 Tr. at 41:20-42:4 (Shatzer). It argued that any dispute regarding the scope of that license is now moot in light of its agreement to dismiss its patent-infringement claims with prejudice. See Feb. 16, 2012 Tr. at 42:1-4 (Shatzer). Leviton Manufacturing reiterated that entering judgment based on holdings in the Federal Circuit's decision affirming the grant of a preliminary injunction would not be appropriate. See Feb. 16, 2012 Tr. at 42:9-12 (Shatzer). The Plaintiffs responded that Leviton Manufacturing is trying to avoid an adverse judgment against it and that there is still an ongoing dispute. See Feb. 16, 2012 Tr. at 43:11-16 (Long). Leviton Manufacturing argued that the Plaintiffs are seeking to litigate the scope of the implied license in case they intend to bring other products to the market in the future and that any decision the Court renders would be an advisory opinion. See Feb. 16, 2012 Tr. at 43:17-44:3 (Shatzer). The Plaintiffs asserted that they want as much clarity as possible on the resolution of the current dispute before the Court to avoid future litigation and to avoid Leviton Manufacturing in the future saying that the Plaintiffs do not have an implied license because that issue has not been decided. See Feb. 16, 2012 Tr. at 44:4-45:5 (Long).

The Plaintiffs have, since the February 16, 2012 hearing, filed a separate motion for summary judgment in which they seek summary judgment in their favor on Counts I and II. See Plaintiffs' MSJ at 1. On March 26, 2012, Leviton Manufacturing filed a cross-motion for summary

judgment on Counts I an II.  See Leviton's MSJ at 1-2.

## LEGAL STANDARD FOR MOTIONS TO DISMISS UNDER RULE 12(b)(1)

"Federal courts are courts of limited jurisdiction; they are empowered to hear only those cases authorized and defined in the Constitution which have been entrusted to them under a jurisdictional grant by Congress." Henry v. Office of Thrift Supervision, 43 F.3d 507, 511 (10th Cir. 1994)(citations omitted).  A plaintiff generally bears the burden of demonstrating the court's jurisdiction to hear his or her claims.  See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 104 (1998)("[T]he party invoking federal jurisdiction bears the burden of establishing its existence."). Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a party to raise the defense of the court's "lack of jurisdiction over the subject matter" by motion.  Fed. R. Civ. P.12(b)(1).  The United States Court of Appeals for the Tenth Circuit has held that motions to dismiss for lack of subject-matter jurisdiction "generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject-matter jurisdiction; or (2) a challenge to the actual facts upon which subject-matter jurisdiction is based."  Ruiz v. McDonnell, 299 F.3d 1173, 1180 (10th Cir. 2002).

> On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a rule 12(b)(6) motion: the court must consider the complaint's allegations to be true.  See Ruiz v. McDonnell, 299 F.3d at 1180; Williamson v. Tucker, 645 F.2d 404, 412 (5th Cir. 1981).  But when the attack is aimed at the jurisdictional facts themselves, a district court may not presume the truthfulness of those allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).  In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 [summary-judgment] motion.

Plant Oil Powered Diesel Fuel Sys., Inc. v. ExxonMobil Corp., 801 F.Supp.2d 1163, 1175-76 (D.N.M. 2011)(Browning, J.).  As the United States Court of Appeals for the Fifth Circuit has stated:

> [T]he trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56.

> Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction -- its very power to hear the case -- there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

Williamson v. Tucker, 645 F.2d 404, 412-13 (5th Cir. 1981)(quoting Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)).

When making a rule 12(b)(1) motion a party may go beyond the allegations in the complaint to challenge the facts upon which jurisdiction depends, and may do so by relying on affidavits or other evidence properly before the court.  See New Mexicans for Bill Richardson v. Gonzales, 64 F.3d 1495, 1499 (10th Cir. 1995); Holt v. United States, 46 F.3d 1000, 1003 (10th Cir.1995).  In those instances, a court's reference to evidence outside the pleadings does not necessarily convert the motion to a rule 56 motion for summary judgment.  See Holt v. United States, 46 F.3d at 1003 (citing Wheeler v. Hurdman, 825 F.2d 257, 259 n.5 (10th Cir. 1987)).  Where, however, the court determines that jurisdictional issues raised in rule 12(b)(1) motion are intertwined with the case's merits, the court should resolve the motion under either rule 12(b)(6) or rule 56.  See Franklin Sav. Corp. v. United States, 180 F.3d 1124, 1129 (10th Cir. 1999); Tippet v. United States, 108 F.3d 1194, 1196 (10th Cir. 1997).  "When deciding whether jurisdiction is intertwined with the merits of a particular dispute, 'the underlying issue is whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim.'"  Davis ex rel. Davis v. United States, 343 F.3d 1282, 1296 (10th Cir. 2003)(quoting Sizova v. Nat'l Inst. of Standards & Tech., 282 F.3d 1320, 1324 (10th Cir. 2002)).

### RELEVANT LAW REGARDING SUPPLEMENTAL JURISDICTION

It is a fundamental precept of American law that the federal courts are "courts of limited

jurisdiction." Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005). Federal courts "possess only that power authorized by [the] Constitution and statute." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). Among the powers that Congress has bestowed upon the courts is the power to hear controversies arising under federal law -- federal question jurisdiction -- and controversies arising between citizens of different states -- diversity jurisdiction. See 28 U.S.C. §§ 1331-32.

### 1.    Supplemental Jurisdiction.

Although a statutory basis is necessary for federal courts to exercise jurisdiction over a controversy, "it is well established -- in certain classes of cases -- that, once a court has original jurisdiction over some claims in the action, it may exercise supplemental jurisdiction over additional claims that are part of the same case or controversy." Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. at 552. The Supreme Court of the United States has long subscribed to the concept of supplemental jurisdiction recognized in two common-law doctrines -- pendent and ancillary jurisdiction. Federal courts may exercise pendent jurisdiction over state-law claims when "state and federal claims . . . derive from a common nucleus of operative fact." United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966). Supplemental jurisdiction gives federal courts the flexibility to hear a cause of action even after the introduction of third parties whose insertion into the litigation is not supported by any independent grounds for federal jurisdiction, when those parties share a common interest in the outcome of the litigation and are logical participants in it. See Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 375 n.18 (1978).

In 1988, Chief Justice William H. Rehnquist created the Federal Courts Study Committee to analyze the federal court system and to recommend reforms. See James v. Chavez, No. 09-0540, 2011 WL 6013547, at *5 (D.N.M. Nov. 21, 2011)(Browning, J.)(citing 16 Moore's Federal Practice,

§ 106.04[5] (Matthew Bender 3d ed.)).   In response to the Committee's findings regarding "pendent" and "ancillary" jurisdiction, Congress codified the application of the two doctrines when it passed the Judicial Improvements Act of 1990:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a).  In enacting 28 U.S.C. § 1367, Congress conferred upon federal district courts "supplemental forms of jurisdiction . . . [that] enable them to take full advantage of the rules on claim and party joinder to deal economically -- in single rather than multiple litigation -- with matters arising from the same transaction or occurrence."  Report of the Federal Courts Study Committee, Part II.2.B.2.b. (April 2, 1990), reprinted in 22 Conn. L. Rev. 733, 787 (1990).

### 2.    District Court Discretion.

The Tenth Circuit has followed the Supreme Court's lead in classifying supplemental jurisdiction, not as a litigant's right, but as a matter of judicial discretion.  See Estate of Harshman v. Jackson Hole Mountain Resort Corp., 379 F.3d 1161, 1165 (10th Cir. 2004)(citing City of Chi. v. Int'l Coll. of Surgeons, 522 U.S. 156, 173 (1997)).  In circumstances where the supplemental jurisdiction statute may support supplemental jurisdiction, the district court retains discretion to decline to exercise that jurisdiction.  The traditional analysis, based on the Supreme Court's opinion in United Mine Workers v. Gibbs, compelled courts to consider "judicial economy, convenience and fairness to litigants" when deciding whether to exercise supplemental jurisdiction.  383 U.S. at 726.  Similarly, Congress' supplemental jurisdiction statute enumerates four factors that the court should consider:

(1)     the claim raises a novel or complex issue of State law,

(2)     the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3)     the district court has dismissed all claims over which it has original jurisdiction, or

(4)     in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  In applying these factors, district courts should seek to exercise supplemental jurisdiction in an effort to "vindicate values of economy, convenience, fairness, and comity." Estate of Harshman v. Jackson Hole Mountain Resort Corp., 379 F.3d at 1164.

Numerous courts have acknowledged that 28 U.S.C. § 1367(c) necessarily changed the district courts' supplemental jurisdiction discretion analysis and that, unless one of the conditions of 28 U.S.C. § 1367(c) exists, courts are not free to decline jurisdiction.  See Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442, 447 (2d Cir. 1998)("Section 1367 has indeed altered Gibbs' discretionary analysis."); McLaurin v. Prater, 30 F.3d 982, 985 (8th Cir. 1994)("The statute plainly allows the district court to reject jurisdiction over supplemental claims only in the four instances described therein."); Executive Software N. Am. v. U.S. Dist. Court, 24 F.3d 1545, 1557 (9th Cir. 1994)("By codifying preexisting applications of Gibbs in subsections (c)(1)-(3), however, it is clear that Congress intended the exercise of discretion to be triggered by the court's identification of a factual predicate that corresponds to one of the section 1367(c) categories."); Palmer v. Hosp. Auth., 22 F.3d 1559, 1569 (11th Cir. 1994)("[S]upplemental jurisdiction must be exercised in the absence of any of the four factors of section 1367(c)."); Bonadeo v. Lujan, No. 08-0812, 2009 WL 1324119, at *8 (D.N.M. Apr. 30, 2009)(Browning, J.)("28 U.S.C. § 1367(c) changed the district courts' supplemental jurisdiction discretion analysis to prohibit courts from

declining jurisdiction unless one of the conditions of 28 U.S.C. § 1367(c) exists."). At least one

other district court in the Tenth Circuit besides this Court has reached the same conclusion. See

Gudenkauf v. Stauffer Commc'ns, Inc., 896 F.Supp. 1082, 1084 (D. Kan. 1995)("[A]ny exercise of

discretion declining jurisdiction over pendent claims or parties cannot occur until 'triggered' by the

existence of one of the four conditions enumerated.").

### LAW REGARDING CONSTITUTIONAL DOCTRINE OF MOOTNESS

"Article III, Section 2 of the United States Constitution limits the federal courts' jurisdiction

to actual cases and controversies." Salazar v. City of Albuquerque, 776 F.Supp.2d 1217, 1227

(D.N.M. 2011)(Browning, J.). "Federal courts are without authority to decide questions that cannot

affect the rights of litigants in the case before them." Ford v. Sully, 773 F.Supp. 1457, 1464 (D.

Kan. 1991)(citing North Carolina v. Rice, 404 U.S. 244, 246 (1971)). See Johansen v. City of

Bartlesville, Okla., 862 F.2d 1423, 1426 (10th Cir. 1988); Johnson v. Riveland, 855 F. 2d 1477,

1480 (10th Cir. 1988)). "To qualify as a case fit for federal-court adjudication, an actual controversy

must be extant at all stages of review, not merely at the time the complaint is filed." Arizonans for

Official English v. Arizona, 520 U.S. 43, 67 (1997). See Rio Grande Silvery Minnow v. Bureau of

Reclamation, 601 F.3d 1096, 1121 (10th Cir. 2010). Accordingly, if a case is moot, or becomes

moot during any stage of the case, the court does not have jurisdiction to hear the case. A case

becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable

interest in the outcome." Cnty. of L.A. v. Davis, 440 U.S. 625, 631 (1979)(citing Powell v.

McCormack, 395 U.S. 486, 496 (1969)).

A court should not be quick to dismiss a claim for lack of jurisdiction. "Before deciding that

there is no jurisdiction, the district court must look at the way the complaint is drawn to see if it is

drawn so as to claim a right to recover under the Constitution and the laws of the United States."

Bell v. Hood, 327 U.S. 678, 682 (1946).  Jurisdiction is not dependent on whether the plaintiff will

succeed in his cause of action; jurisdiction is determined before the details of the cause of action,

both in law and fact, are considered.  See Bell v. Hood, 327 U.S. at 682.

## LAW REGARDING EXERCISE OF DISCRETIONARY JURISDICTION OVER DECLARATORY JUDGMENT ACTIONS

In Brillhart v. Excess Insurance Co. of America, 316 U.S. 491 (1942), the Supreme Court

explained that district courts are "under no compulsion to exercise . . . jurisdiction" under the

Declaratory Judgment Act, 28 U.S.C. §§ 2201-02. 316 U.S. at 494.  The Supreme Court has further

elaborated:

> We agree, for all practical purposes, with Professor Borchard, who observed
> half a century ago that "[t]here is . . . nothing automatic or obligatory about the
> assumption of 'jurisdiction' by a federal court" to hear a declaratory judgment
> action. By the Declaratory Judgment Act, Congress sought to place a remedial arrow
> in the district court's quiver; it created an opportunity, rather than a duty, to grant
> a new form of relief to qualifying litigants.  Consistent with the nonobligatory nature
> of the remedy, a district court is authorized, in the sound exercise of its discretion,
> to stay or to dismiss an action seeking a declaratory judgment before trial or after all
> arguments have drawn to a close.  In the declaratory judgment context, the normal
> principle that federal courts should adjudicate claims within their jurisdiction yields
> to considerations of practicality and wise judicial administration.

Wilton v. Seven Falls Co., 515 U.S. 277, 288 (1995)(footnote omitted)(citations omitted).  "The

Tenth Circuit has adopted a five-factor test for evaluating whether a district court should exercise

its discretionary jurisdiction over a declaratory judgment action."  Valdez v. Metro. Prop. & Cas.

Ins. Co., No. 11-0507, 2012 WL 1132374, at *19 (D.N.M. Mar. 19, 2012)(Browning, J.)(citing St.

Paul Fire and Marine Ins. Co. v. Runyon, 53 F.3d 1167, 1169 (10th Cir. 1995)).  These factors

include:

> [1] whether a declaratory action would settle the controversy; [2] whether it would
> serve a useful purpose in clarifying the legal relations at issue; [3] whether the
> declaratory remedy is being used merely for the purpose of "procedural fencing" or
> "to provide an arena for a race to res judicata "; [4] whether use of a declaratory

action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

St. Paul Fire and Marine Ins. Co. v. Runyon, 53 F.3d at 1169 (alterations in original)(quoting State Farm Fire and Cas. Co. v. Mhoon, 31 F.3d at 983).

## LAW REGARDING ATTORNEY'S FEES UNDER 35 U.S.C. § 285

35 U.S.C. § 285 provides: "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. "The decision to award attorney fees is within the discretion of the trial judge, but the conclusion that a case is exceptional is a finding of fact reviewable only for clear error." Takeda Chem Indus., Ltd. v. Mylan Labs., Inc., 549 F.3d 1381, 1387 (Fed. Cir. 2008). The Federal Circuit has stated that this statute permits an award of attorney's fees in "extraordinary cases" such as when there was a "finding of unfairness or bad faith in the conduct of the losing party, or some other equitable consideration of similar force, which makes it grossly unjust that the winner of the particular law suit be left to bear the burden of his counsel fees which prevailing litigants normally bear." Mach. Corp. of Am. v. Gullfiber AB, 774 F.2d 467, 471 (Fed. Cir. 1985). "Allowance of fees only in exceptional cases is based on the premise that courts should attempt to strike a balance between the interest of the patentee in protecting his statutory rights and the interest of the public in confining such rights to their legal limits." Mach. Corp. of Am. v. Gullfiber AB, 774 F.2d at 471. To support an award of attorney's fees under 35 U.S.C. § 285, there must be "the finding of an exceptional case" by "clear and convincing evidence." Takeda Chem Indus., Ltd. v. Mylan Labs., Inc., 549 F.3d at 1387. Nevertheless, in the context of "litigation misconduct, fees can be awarded pursuant to section 285 even absent clear and convincing evidence that an asserted claim or defense is objectively baseless." Old Reliable Wholesale, Inc. v. Cornell Corp., 635 F.3d 539, 549 (Fed. Cir. 2011). A court may award attorney's

fees under this statute to either a plaintiff or a defendant.  See Phonometrics, Inc. v. ITT Sheraton Corp., 64 F.App'x 219, 221 (Fed. Cir. 2003)(unpublished)("When 'the patentee is manifestly unreasonable in assessing infringement, while continuing to assert infringement in court, an inference is proper of bad faith, whether grounded in or denominated wrongful intent, recklessness, or gross negligence.'" (quoting Eltech Sys., Corp. v. PPG Indus., 903 F.2d 805, 811 (Fed. Cir. 1990)).  The Federal Circuit applies its own law when determining whether an award of attorney's fees was appropriate under 35 U.S.C. § 285.  See Bywaters v. United States, 670 F.3d 1221, 1227-28 (Fed. Cir. 2012)("Furthermore, we have consistently applied our law to claims for attorneys' fees under section 285 of the Patent Act because section 285 relates to an area of substantive law within our exclusive jurisdiction.").

   "As a general matter, . . . a claim for attorney's fees is not part of the merits of the action to which the fees pertain."  Budinich v. Becton Dickinson & Co., 486 U.S. 196, 200 (1988).  "Such an award does not remedy the injury giving rise to the action, and indeed is often available to the party defending against the action."  Budinich v. Becton Dickinson & Co., 486 U.S. at 200.  "At common law, attorney's fees were regarded as an element of 'costs' awarded to the prevailing party."  Budinich v. Becton Dickinson & Co., 486 U.S. at 200.  Additionally, "[m]any federal statutes providing for attorney's fees continue to specify that they are to be taxed and collected as 'costs.'"  Budinich v. Becton Dickinson & Co., 486 U.S. at 201.  Even when attorney's fees are "part of the merits of judgment," the merits of a case are still final for appellate purposes even when the lower court has not decided the issue of attorney's fees:

   This practical approach to the matter suggests that what is of importance here is not
   preservation of conceptual consistency in the status of a particular fee authorization
   as "merits" or "nonmerits," but rather preservation of operational consistency and
   predictability in the overall application of § 1291.  This requires, we think, a uniform
   rule that an unresolved issue of attorney's fees for the litigation in question does not

prevent judgment on the merits from being final.

Budinich v. Becton Dickinson & Co., 486 U.S. at 202.  It is irrelevant, for purposes of determining whether the merits of an action are final, whether the plaintiff requested attorney's fees as part of the prayer in his or her complaint or in a separate motion.  Budinich v. Becton Dickinson & Co., 486 U.S. at 201.

## ANALYSIS

The Court will grant GPG's MTD.  Based on the lack of allegations in Leviton Manufacturing's Answer that indicate there is any common nucleus of operative fact between the patent dispute in this case and the trade-secret dispute, the Court concludes that it cannot properly exercise supplemental jurisdiction over Leviton Manufacturing's trade-secret claim -- Counterclaim III.  The Court will grant in part and deny in part Leviton's MTD, consistent with the parties' agreements.  The Court will accept the parties' agreements to dismiss Leviton Manufacturing's patent-infringement counterclaims with prejudice -- Counterclaims I and II.  The Court will accept the parties' agreement to dismiss Counts III through VIII.  The Court concludes that, following dismissal with prejudice of Counterclaims I and II for patent infringement, Count II is moot based on the lack of an actual controversy.  Because no federal claims remain in this case, the Court will decline to exercise supplemental jurisdiction over the remaining state-law claims -- Count I and Count X.  Because Count II is moot, and because the Court is declining to exercise jurisdiction over Count I, the Court will deny the Plaintiffs' MSJ and Leviton's MSJ as moot.  Because the Court believes that bringing this case to a conclusion is in the Plaintiffs' best interests to permit them to enforce, if necessary, the dismissal with prejudice under the doctrines of res judicata and collateral estoppel, the Court will proceed to enter final judgment on the claims asserted in this case.  The Court retains jurisdiction over the request for attorney's fees under 35 U.S.C. § 285 as collateral to

the merits of the case.

I.    **THE COURT WILL GRANT GPG'S MTD, BECAUSE THE ALLEGATIONS IN LEVITON MANUFACTURING'S ANSWER DO NOT ESTABLISH THAT THERE IS A COMMON NUCLEUS OF OPERATIVE FACT BETWEEN THE TRADE-SECRET DISPUTE AND THE PATENT DISPUTE.**

Based on the allegations in Leviton Manufacturing's Answer, Leviton Manufacturing has not demonstrated that there is a common nucleus of operative fact between the patent dispute in this case, which implicates claims over which the Court has original jurisdiction, and the trade-secret dispute, which implicates a state law claim. While there may be an overarching dispute involving GPG's efforts to sell its products in competition with Leviton Manufacturing that relate to the products underlying the patent claims, there are no allegations in Leviton Manufacturing's Answer to that effect.

Leviton Manufacturing's Answer contains allegations about misappropriation of trade secrets but contains few facts that link that dispute to the patent dispute. Leviton Manufacturing alleges that it "has obtained numerous patents related to its innovation in GFCI products," upon some of which the Plaintiffs have allegedly infringed. Answer ¶ 140, at 16. Leviton Manufacturing alleges that it has, "from its founding, . . . developed proprietary technical and business strategies related to its GFCI products and its other electrical products through the expenditure of considerable employee work hours and company resources." Answer ¶ 142, at 16. It alleges that it has "complied proprietary product development strategies, product branding strategies, product packaging strategies, product improvement strategies and plans, product marketing strategies and strategies with respect to industry organizations." Answer ¶ 142, at 16. Leviton Manufacturing alleges that "General Protecht manufactures GFCIs and other electrical products that compete with Leviton's GFCI and electrical products." Answer ¶ 144, at 17. Leviton Manufacturing alleges that GPG,

"seeking to diminish Leviton's lead and market share in the industry, . . . sought out proprietary and confidential trade secrets of Leviton" to "improperly gain a competitive advantage over Leviton in the marketplace." Answer ¶ 144, at 17. For instance, Leviton Manufacturing alleges that "General Protecht induced Leviton's Customer Employee to improperly disclose Leviton's trade secrets to General Protecht," that "General Protecht has used those improperly obtained trade secrets without the express or implied consent of Leviton," and that "General Protecht wrongfully copied and retained copies of Leviton's confidential and proprietary Presentation [regarding business and customer strategies]." Answer ¶¶ 146, 168, at 18, 23.

While Leviton Manufacturing alleges that it has trade secrets that relate to GFCIs and that GPG competes with it in the market for electrical products, such as GFCIs, there are no factual allegations detailing the products to which the allegedly misappropriated trade secrets relate. Leviton Manufacturing alleges generally "that General Protecht has misused Leviton's wrongfully obtained proprietary information to divert business from Leviton to General Protecht." Answer ¶ 149, at 19. Leviton Manufacturing provides more detail in that it alleges that the misappropriated trade-secret information relates to "[c]ustomer pricing," and that "a competitor who wrongfully learns of Leviton's customer pricing and product strategy can price its products to steal customers and sales away from Leviton and use Leviton's product strategy to also steal customers and sales." Answer ¶ 149, at 19. Leviton Manufacturing acknowledges that it has a "product portfolio of over 25,000 devices and systems used in homes, businesses and industry." Answer ¶ 137, at 15. GPG's misconduct regarding the trade secrets allegedly occurred in Georgia. See Answer ¶ 147, at 18. Leviton Manufacturing does not allege a location, other than generally referring to the United States, where the conduct occurred in which GPG allegedly infringed upon the '124 and '151 patents. See Answer ¶¶ 153, 159 at 20-22. The Plaintiffs allege that some of the important events giving rise to

the current dispute, specifically the negotiation of the settlement agreement from the previous lawsuit between some of the parties, occurred in District of New Mexico.  See Complaint ¶¶ 18-28, at 5-6.  None of the Plaintiffs' other allegations refer to any conduct that occurred in Georgia.

Because the Court has broader authority under rule 12(b)(1) of the Federal Rules of Civil Procedure than it does under rule 12(b)(6), the Court may properly consider evidence regarding the underlying trade secrets outside the parties' pleadings to determine if there is a common nucleus of operative fact.  See Holt v. United States, 46 F.3d at 1003 ("A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).  In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion." (citations omitted)).[7]  While there may be some common background facts in the trade-secret dispute and the patent dispute, that factual overlap does not necessarily mean that the two disputes share operative facts.  If the Court had before it more evidence about the allegedly misappropriated trade secrets, including their connection to GFCIs and the patent dispute regarding GFCIs, the Court might be able to conclude that there is a

---

[7]"When reviewing 'procedural matters not unique to the areas that are exclusively assigned to the Federal Circuit,' th[e Federal Circuit] generally applies the procedural law of the regional circuit in which the case originated."  Tex. Instruments Inc. v. Tessera, Inc., 231 F.3d 1325, 1328 (Fed. Cir. 2000).  The Federal Circuit has noted, however, that it will apply "its own body of precedent to uniformly deal with procedural matters arising from substantive issues in areas of law within the unique jurisdiction of this circuit."  Tex. Instruments Inc. v. Tessera, Inc., 231 F.3d at 1328.  Procedural issues regarding supplemental jurisdiction can arise in any federal case and are not unique to the Federal Circuit.  See, e.g., United Mine Workers of Am. v. Gibbs, 383 U.S. at 725-26.  The matters at issue in this supplemental-jurisdiction question relate primarily to whether the allegations in Leviton Manufacturing's Answer regarding the patent-infringement dispute and the allegations regarding the trade-secret dispute are part of the same common nucleus of operative fact.  These procedural matters do not arise from substantive issues in an area of law within the unique jurisdiction of the Federal Circuit.  Thus, the Court will rely upon precedent from the Federal Circuit only to the extent it is persuasive, and will remain bound by Tenth Circuit and Supreme Court precedent.

common nucleus of operative fact with the patent dispute regarding GFCIs.  Absent additional evidence or additional allegations connecting the trade-secret dispute to the patent dispute, there does not appear to be a common nucleus of operative fact such that these are claims that a plaintiff would expect to try in one proceeding.  See Walker v. THI of N.M. at Hobbs Ctr., 803 F.Supp.2d 1287, 1323 (D.N.M. 2011)(Browning, J.)("A claim is part of the same case or controversy if it derives from a common nucleus of operative fact, such that the plaintiff would normally be expected to try the claims in one proceeding." (citing United Mine Workers of Am. v. Gibbs, 383 U.S. at 725-26 (1966); Price v. Wolford, 608 F.3d 698, 702-03 (10th Cir. 2010))).

While the Federal Circuit has recognized that supplemental jurisdiction over unfair competition claims is appropriate when all the claims arise out of the sales activity for the products at issue in the patent dispute, the current allegations and evidence before the Court do not indicate that the claims arise out of the same sales or other activity for the products at issue in the patent dispute.  3D Sys., Inc. v. Aarotech Labs., Inc., 160 F.3d 1373, 1377 (Fed. Cir. 1998)("In this case, 3D's trade libel and unfair competition claims go hand-in-hand with its patent infringement claims. All of the claims arise out of Aaroflex's sales activity for RP equipment in California, and therefore these claims were properly brought in the district court under the [court's] supplemental jurisdiction . . . .").  As Leviton Manufacturing itself alleges, it has a "product portfolio of over 25,000 devices and systems used in homes, businesses and industry."  Answer ¶ 137, at 15.  The trade-secret dispute may relate to any one of those 25,000 devices and systems, and may have no connection to the products underlying the patent dispute.  Even within the market for electrical devices, there may be various sub-markets where Leviton Manufacturing and GPG compete.  For instance, Leviton Manufacturing acknowledges that it makes products for "homes, businesses and industry."  Answer ¶ 137, at 15.  On the other hand, the trade-secret dispute may have a fundamental

connection to the patent dispute.  The Court does not have enough information to make that determination.  While there appears to be at least a minor temporal overlap between the patent dispute and the trade-secret dispute, see Response to GPG's MTD at 3 (noting that "in 2008, GPG misappropriated Leviton's trade secrets" not long after "the October 2007 Settlement Agreement" from the prior patent litigation), there is no indication that the disputes have any geographical connection other than that the alleged patent infringement and trade-secret misappropriation both occurred in the United States, see Walker v. THI of N.M. at Hobbs Ctr., 803 F.Supp.2d at 1324 ("These nuclei of operative fact are not related in time, space, or origin.").  Given the absence of facts connecting the two disputes, the disputes may have entirely different origins and motivations. See In re Colonial Mortg. Bankers Corp., 228 B.R. 516 (B.A.P. 1st Cir. 1999)(stating that, when determining whether claims derive from the same nucleus of operative fact, a court should consider whether the facts are related in time, space, origin, or motivation).  While both GPG and Leviton Manufacturing may compete with one another for business, that does not mean that, by virtue of their general competition in the marketplace, they could try an unrelated antitrust dispute with a commercial real estate dispute in the same lawsuit.  Leviton Manufacturing is essentially arguing that all claims between two companies can be tried in one case, and that broad rule is not the law. See Mars Inc. v. Kabushiki-Kaisha Nippon Conlux, 24 F.3d 1368, 1375 (Fed. Cir. 1994)("The facts alleged in Mars' own complaint, however, belie the notion that the two claims are derived from a common nucleus of operative fact.").

    While the facts are not as developed in this case as those in Walker v. THI of New Mexico at Hobbs Center, the lack of information connecting the patent dispute and trade-secret dispute presents a similar possibility that a trial covering these two disputes would address largely unrelated events:

Walker's claims and the malicious-abuse-of-process Counterclaim do not derive from a common nucleus of operative fact.  The facts upon which Walker's claims are based relate to Walker's employment at THI of Hobbs and how she was treated during her employment.  The facts upon which the Counterclaim are based relate to Walker's actions in filing her Complaint and amended Complaints, and her actions in the litigation.  These nuclei of operative fact are not related in time, space, or origin.  Although the Addendum and Counterclaim asserts that Walker was terminated for reasons including unsatisfactory performance, and that Walker did not complain about discriminatory statements during her employment, these allegations do not change the nucleus of facts from which the Counterclaim arises -- facts regarding Walker's actions in filing the Complaints, facts regarding her subjective intent and beliefs in filing the complaints, and facts regarding her actions in the litigation.

803 F.Supp.2d at 1324 (citations omitted).  While there may be some of the same witnesses, because

executives from each company may be called upon to testify regarding each dispute, see Response

to GPG's MTD at 1-2 ("Because of the intertwined nature of the claims, Leviton expects that there

will be substantial overlap in witnesses, including at least Leviton's Chief Intellectual Property

Counsel, Meir Blonder, and certain executives for Counterclaim Defendant General Protecht

Group . . . ."), that does not mean "that the counterclaim forms a convenient trial unit with" the

patent claims, Walker v. THI of N.M. at Hobbs Ctr., 803 F.Supp.2d at 1324.  Any significant dispute

between companies could require some of the same witnesses to testify, even though there might

be no factual connection between two different disputes.  Decision-making leaders in a company

may be the same decision-makers in a host of decisions and different disputes, and may also be

relevant witnesses in different legal disputes.  Although the pleading defects in Leviton

Manufacturing's Answer may be curable, Leviton Manufacturing's pleadings are deficient in their

current form.

Although generalized "considerations of judicial economy" may counsel in favor of

exercising subject-matter jurisdiction in a given case, district courts must remain conscious of their

limited subject-matter jurisdiction.  Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 123

-31-

& n.33 (1984).  Doing otherwise "would run counter to the well-established principle that federal courts, as opposed to state trial courts of general jurisdiction, are courts of limited jurisdiction marked out by Congress."  Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. at 123 & n.33. Recognizing the limitations this policy places on litigants choice of forum, the Supreme Court has held: "That a litigant's choice of forum is reduced 'has long been understood to be a part of the tension inherent in our system of federalism.'"  Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. at 123 & n.33.  While it may be more convenient for Leviton Manufacturing if the Court were to exercise jurisdiction over this trade-secret dispute, the Court is bound to comply with the congressional and constitutional limitations on its subject-matter jurisdiction.  The Court will grant GPG's MTD and dismiss Counterclaim III.

## II.  PURSUANT TO THE PARTIES' AGREEMENT, THE COURT WILL DISMISS COUNTERCLAIMS I AND II IN LEVITON MANUFACTURING'S ANSWER.

Leviton Manufacturing asks the Court to enter "an order dismissing its First and Second Counterclaims" for patent infringement with prejudice.  Memorandum in Support of Leviton's MTD at 1.  The "Plaintiffs agree that Leviton's infringement counterclaims should be dismissed with prejudice."  Response to Leviton's MTD at 1.  Thus, the Court will dismiss Counterclaim I and II asserted in Leviton's Answer with prejudice.

## III.  THE COURT WILL ACCEPT THE PARTIES' STIPULATION THAT IT SHOULD DISMISS COUNTS III THROUGH VIII IN THE PLAINTIFFS' COMPLAINT.

The parties have agreed that the Court should dismiss Counts III through VIII in the Plaintiffs' Complaint for lack of subject-matter jurisdiction.  The Court expresses no opinion whether the parties are correct that Counts III through VIII should be dismissed for lack of subject-matter jurisdiction because no case or controversy exists.  The Court will, however, accept the parties' agreement to dismiss those claims and will dismiss those claims.  Thus, the Court will

dismiss Counts III through VIII.

## IV.   THE COURT FINDS THAT COUNT II IN THE PLAINTIFFS' COMPLAINT IS MOOT FOR CONSTITUTIONAL PURPOSES.

The Federal Circuit has stated:

> A party seeking to base jurisdiction on the Declaratory Judgment Act bears the burden of proving that the facts alleged, under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

Benitec Austl., Ltd. v. Nucleonics, Inc., 495 F.3d 1340, 1343 (Fed. Cir. 2007)(quoting MedImmune, Inc. v. Genentech, Inc., 549 U.S. at 127).[8]   Accord Rezaq v. Nalley, Nos. 11-1069 and 11-1072, 2012 WL 1372151, at *5 (10th Cir. Apr. 20, 2012)("When prospective equitable relief is requested, the requesting party must show an ongoing, personal stake in the outcome of the controversy, a likelihood of substantial and immediate irreparable injury, and the inadequacy of remedies at law."). Parties are not permitted to seek "an advisory opinion as to the validity of a defense" through a

_____

[8]"When reviewing 'procedural matters not unique to the areas that are exclusively assigned to the Federal Circuit,' th[e Federal Circuit] generally applies the procedural law of the regional circuit in which the case originated." Tex. Instruments Inc. v. Tessera, Inc., 231 F.3d at 1328. The Federal Circuit has noted, however, that it will apply "its own body of precedent to uniformly deal with procedural matters arising from substantive issues in areas of law within the unique jurisdiction of this circuit." Tex. Instruments Inc. v. Tessera, Inc., 231 F.3d at 1328. Procedural issues regarding jurisdiction under the Declaratory Judgment Act can arise in any federal case and are not unique to the Federal Circuit. See, e.g., Calderon v. Ashmus, 523 U.S. 740, 748 (1998)(addressing declaratory judgments in the context of a habeas proceeding). The question of subject-matter jurisdiction under the Declaratory Judgment Act presented here relates primarily to the effect of dismissal with prejudice of counterclaims that mirror a declaratory-judgment claim seeking a declaration of non-liability. That situation can arise in a variety of contexts outside of patent law, including contexts where there are claims of infringement, such as copyright disputes. See, e.g., Mostly Memories, Inc. v. For Your Ease Only, Inc., 526 F.3d 1093, 1098 n.1 (7th Cir. 2008)(addressing mootness of claims seeking declaratory judgment of non-infringement following dismissal of the infringement claims with prejudice). These procedural matters do not arise from substantive issues in an area of law within the unique jurisdiction of the Federal Circuit. Thus, the Court will rely upon precedent from the Federal Circuit only to the extent it is persuasive, and will continue to be bound by precedent from the Supreme Court and from the Tenth Circuit.

declaratory judgment action.  <u>Coffman v. Breeze Corps., Inc.</u>, 323 U.S. 316, 324 (1945).  <u>Accord</u>

<u>Calderon v. Ashmus</u>, 523 U.S. 740, 748 (1998)(recognizing "the need . . . to prevent federal-court

litigants from seeking by declaratory judgment to litigate a single issue in a dispute that must await

another lawsuit for complete resolution").  Likewise, Tenth Circuit has held that "generally one

cannot bring a declaratory judgment action just to resolve one isolated issue in a possible future

controversy." <u>Columbian Fin. Corp. v. BancInsure, Inc.</u>, 650 F.3d 1372, 1380 (10th Cir. 2011).  The

Federal Circuit has further detailed:

> "If . . . a party has actually been charged with infringement of the patent, there is,
> <u>necessarily</u>, a case or controversy adequate to support jurisdiction" at that time.
> Further, once that burden has been met, <u>absent further information</u>, that jurisdiction
> continues.  The burden of bringing forth such further information may logically rest
> with the party challenging jurisdiction, but the actual burden of proof remains with
> the party seeking to invoke jurisdiction.

495 F.3d at 1344-45 (emphasis in original)(citations omitted).

Claims become moot when the issues that they present are no longer "live" or the parties lack

a legally cognizable interest in the outcome.  <u>Cnty. of L.A. v. Davis</u>, 440 U.S. at 631.  <u>Accord</u> <u>Nieto</u>

<u>v. Univ. of N.M.</u>, 727 F.Supp.2d 1176, 1183 (D.N.M. 2010)(Browning, J.).  A claim may become

moot if "(i) it can be said with assurance that there is no reasonable expectation that the alleged

violation will recur, and (ii) interim relief or events have completely and irrevocably eradicated the

effects of the alleged violation."  <u>Cnty. of L.A. v. Davis</u>, 440 U.S. at 631.  The burden of

establishing mootness is a heavy one.  <u>See</u> <u>Cnty. of L.A. v. Davis</u>, 440 U.S. at 631.  Courts are

permitted to take into account the relative likelihood of the events which a party asserts keep the

dispute from becoming moot.  <u>See</u> <u>Golden v. Zwickler</u>, 394 U.S. 103, 109 (1969)("We think that

under all the circumstances of the case the fact that it was most unlikely that the Congressman would

again be a candidate for Congress precluded a finding that there was 'sufficient immediacy and

reality' here.").

Additionally, courts are more reluctant to declare a claim or suit moot when, assuming there is a reasonable possibility that the party arguing the case is moot may return to their previously complained of conduct, it appears that a party is engaging in procedural fencing under the guise that the dispute is now moot. "For to say that the case has become moot means that the defendant is entitled to a dismissal as a matter of right." United States v. W.T. Grant Co., 345 U.S. 629, 632 (1953). "The Courts have rightly refused to grant defendants such a powerful weapon against" a lawsuit without approaching the issue cautiously. United States v. W.T. Grant Co., 345 U.S. at 632. As the Supreme Court has held in the context of an antitrust lawsuit:

> When defendants are shown to have settled into a continuing practice or entered into a conspiracy violative of anti-trust laws, courts will not assume that it has been abandoned without clear proof. It is the duty of the courts to beware of efforts to defeat injunctive relief by protestations of repentance and reform, especially when abandonment seems timed to anticipate suit, and there is probability of resumption.

United States v. Or. State Med. Soc'y, 343 U.S. 326, 695-96 (1952). More recently, the Supreme Court stated the following when the prevailing party in the lower court attempted to argue mootness to insulate the lower court's judgment from the Supreme Court's review: "Our interest in preventing litigants from attempting to manipulate the Court's jurisdiction to insulate a favorable decision from review further counsels against a finding of mootness here." City of Erie v. Pap's A.M., 529 U.S. 277, 288 (2000).

The parties do not dispute that there was a live controversy earlier based on the charges of patent infringement. The issue now is whether a live controversy exists given that Leviton Manufacturing has moved to dismiss with prejudice its patent counterclaims and the Plaintiffs have agreed to dismissal with prejudice of those claims. Leviton Manufacturing contends that, if the

Court were to allow Count II in the Plaintiff's Complaint to proceed, the Court would be rendering an advisory opinion on a matter not in dispute given that Leviton Manufacturing can no longer bring its patent-infringement claims once they have been dismissed with prejudice.   The Plaintiffs characterize Leviton Manufacturing's conduct as gamesmanship in that Leviton Manufacturing seeks to avoid litigating the existence and scope of the implied license at issue in Count II.

Here, the Federal Circuit's holding in its opinion affirming the Court's grant of the preliminary injunction provides a strong basis for ultimately finding that the Plaintiffs have an implied license regarding the patents at issue in this litigation based on the terms of the settlement agreement the parties negotiated in the previous litigation underlying this dispute.  For instance, the Federal Circuit held when interpreting the parties' settlement agreement:

> From our holding in TransCore it reasonably follows that where, as here, continuations issue from parent patents that previously have been licensed as to certain products, it may be presumed that, absent a clear indication of mutual intent to the contrary, those products are impliedly licensed under the continuations as well. If the parties intend otherwise, it is their burden to make such intent clear in the license.  It is well settled that parties are free to contract around an interpretive presumption that does not reflect their intentions. Indeed, "patent license agreements can be written to convey different scopes of promises not to sue, e.g., a promise not to sue under a specific patent or, more broadly, a promise not to sue under any patent the licensor now has or may acquire in the future."  In this case, Leviton did not do so.

Gen. Protecht Grp., Inc. v. Leviton Mfg. Co., Inc., 651 F.3d 1355, 1361-62 (Fed. Cir. 2011).  While the Federal Circuit ruled on the appropriateness of granting a preliminary injunction, it was largely dealing with the legal question of interpreting the provisions of a contract.  Thus, at trial or on summary judgment, the Federal Circuit's logic would be highly persuasive in interpreting the terms of the implied license in the settlement agreement.  Nevertheless, determinations made during the resolution of a preliminary injunction are not binding at a future proceeding on the merits, such as a trial.  See University of Tex. v. Camenisch, 451 U.S. 390, 395 (1981)("[T]he findings of fact and

conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits."). Ultimately, it appears that Leviton Manufacturing is seeking to avoid an unfavorable ruling regarding the terms of the scope of the implied license by arguing that the case is now moot. While it tries to argue that the case is moot, it has, as the Plaintiffs have pointed out, resisted conceding that an implied license exists. Given the dismissal with prejudice of its patent counterclaims, however, the mootness question requires further analysis.

This case is in a unique procedural posture, because Leviton Manufacturing agrees to dismissal with prejudice of its patent-infringement claims that cover all the allegedly infringing activity that is subject of this lawsuit, but does not want to litigate the existence and scope of the Plaintiffs' implied license. To resolve this mootness issue, the Court must find the closest controlling factual scenarios in the case law. Some of the most comparable cases are the Federal Circuit decisions where one party grants the other party a covenant not to sue for patent infringement on the patents covered in the litigation. Those cases are analogous to this case, because a dismissal with prejudice has res judicata and collateral estoppel effect that would prevent a party from bringing claims in a later lawsuit related to the infringing activity covered by an earlier lawsuit.[9]

_____

[9]The Federal Circuit has noted that it will apply "its own body of precedent to uniformly deal with procedural matters arising from substantive issues in areas of law within the unique jurisdiction of this circuit." Tex. Instruments Inc. v. Tessera, Inc., 231 F.3d at 1328. The doctrines of res judicata and collateral estoppel are not within the exclusive jurisdiction of the Federal Circuit, so the law of the Tenth Circuit would apply when a district court within the Tenth Circuit applies these doctrines in a patent case. See Grasty v. U.S. Patent & Trademark Office, 211 F.App'x 952, 953 (Fed. Cir. 2007)(unpublished)("Because the application of res judicata or collateral estoppel is not within the exclusive jurisdiction of this court, we apply the law of the circuit in which the district court sits." (citing Vardon Golf Co. v. Karsten Mfg. Corp., 294 F.3d 1330, 1333 (Fed. Cir. 2002)). None of the res judicata or collateral estoppel matters presented in this case arise "from substantive issues in areas of law within the unique jurisdiction of" the Federal Circuit, because the issues presented involve relatively straightforward application of the doctrines of res judicata and collateral estoppel. Tex. Instruments Inc. v. Tessera, Inc., 231 F.3d at 1328. Thus, the Court will rely upon precedent from the Federal Circuit only to the extent it is persuasive, and will remain bound by

The Federal Circuit has held "that a covenant not to sue for patent infringement divests the trial court of subject matter jurisdiction over claims that the patent is invalid, because the covenant eliminates any case or controversy between the parties." Dow Jones & Co., Inc. v. Ablaise Ltd., 606 F.3d 1338, 1346 (Fed. Cir. 2010). The Federal Circuit has qualified that holding by recognizing that "whether a covenant not to sue will divest the trial court of jurisdiction depends on what is covered by the covenant." Dow Jones & Co., Inc. v. Ablaise Ltd., 606 F.3d at 1346-47. For example, the Federal Circuit noted that a covenant in one case did not preclude future infringement actions should the alleged infringer recommence sales of the accused infringing device after the dismissal of the pending action:

> It is not disputed that Revolution, Aspex, and the district court all understood that Revolution's covenant does not protect Aspex from suit should Aspex embark on future marketing of its bottom-mounted eyewear products. Aspex states that this fact alone distinguishes the holding in Super Sack [Mfg. Corp. v. Chase Packaging Corp., 57 F.3d 1054, 1059-60 (Fed. Cir. 1995), overruled on other grounds by MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118], where the covenant not to sue applied to the products as they existed at the time of the suit, even if the products were made and sold in the future. In Super Sack this court deemed it "speculative" as to whether any unknown future products of potentially changed structure would be sufficiently at risk of infringement, to warrant present prosecution of declaratory charges of invalidity. In contrast, Aspex states that it does not intend to change its design, and that the Revolution covenant does not extend to future sales of products of the same structure. We agree that this is a critical distinction from Super Sack, where this court explained that:

>> Although Chase may have some cause to fear an infringement suit under the [patents in suit] based on products that it may develop in the future, [it] has no cause for concern that it can be liable for any infringing acts involving products that it made, sold, or used on or before July 8, 1994, the day Super Sack filed its motion to dismiss for lack of an actual controversy.

> Similarly in Amana Refrigeration, Inc. v. Quadlux, Inc. this court held that "an actual controversy cannot be based on a fear of litigation over future products," referring

---

precedent from the Supreme Court and from the Tenth Circuit.

to potentially modified products that were not yet in existence and that were not included in the charge of infringement in the prior litigation.

Revolution Eyewear, Inc. v. Aspex Eyewear, Inc., 556 F.3d 1294, 1297 (Fed. Cir. 2009)(alterations in original)(citations omitted).

> ### A. THE DISMISSAL WITH PREJUDICE OF THE PATENT COUNTERCLAIMS WOULD SERVE AS A RES JUDICATA OR COLLATERAL ESTOPPEL BAR.

To remain consistent with the Federal Circuit's proscription that determining "whether a covenant not to sue will divest the trial court of jurisdiction depends on what is covered by the covenant," Dow Jones & Co., Inc. v. Ablaise Ltd., 606 F.3d at 1346-47, the Court must determine the effect of Leviton Manufacturing dismissing with prejudice its patent counterclaims that relate to the '124 and '151 patents. The Court concludes that Leviton Manufacturing dismissing its patent-infringement claims with prejudice would ultimately lead to the equivalent of a judgment on the merits for the Plaintiffs on the issue of infringement, because the Plaintiffs could ultimately enforce that dismissal with prejudice of the patent counterclaims on res judicata and/or collateral estoppel grounds.

Once the Court enters a final judgment in this case, there will be a res judicata effect that will permit the Plaintiffs to enforce the dismissal with prejudice if Leviton Manufacturing seeks to relitigate its patent-infringement claims. Given that Leviton Manufacturing agreed to dismiss its patent-infringement claims with prejudice, the case law indicates that it would be barred from relitigating its patent-infringement claims. See Cnty. of Santa Fe, N.M. v. Pub. Serv. Co. of N.M., 311 F.3d 1031, 1048 (10th Cir. 2002)("But if the County is allowed to dismiss its suit with prejudice, that dismissal will act as res judicata and prevent the County from filing any additional claims or suits against PNM concerning alleged violations of the Code by the powerline project.").

Cf. Ford-Clifton v. Dep't of Veterans Affairs, 661 F.3d 655, 660 (Fed. Cir. 2011)("It is widely agreed that an earlier dismissal based on a settlement agreement constitutes a final judgment on the merits in a res judicata analysis.").  The case law from the Tenth Circuit requires that three elements be met to invoke res judicata: "(1) a final judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits."  Pelt v. Utah, 539 F.3d 1271, 1281 (10th Cir. 2008).  Res judicata then bars all claims arising out of the same transaction or occurrence as the previous lawsuit.  See Nwosun v. Gen. Mills Rests., Inc., 124 F.3d 1255, 1257 (10th Cir. 1997)("[A] cause of action includes all claims or legal theories of recovery that arise from the same transaction, event, or occurrence.  All claims arising out of the transaction must therefore be presented in one suit or be barred from subsequent litigation.").  Accord Ford-Clifton v. Dep't of Veterans Affairs, 661 F.3d at 660 ("Pursuant to the doctrine of res judicata, a final judgment on the merits bars a second action involving the same parties and the same claim.").

Collateral estoppel, or issue preclusion, bars reconsideration of an issue previously decided in a prior action where:

> (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

B-S Steel of Kan., Inc. v. Tex. Indus., Inc., 439 F.3d 653, 662 (10th Cir. 2006).  Given that Leviton Manufacturing has consented to dismissal with prejudice of its patent counterclaims, the factors for collateral estoppel would likely counsel in favor of collaterally estopping Leviton Manufacturing from relitigating the infringement issues underlying this lawsuit.  Cf. Cnty. of Santa Fe, N.M. v. Pub. Serv. Co. of N.M., 311 F.3d at 1048 ("But if the County is allowed to dismiss its suit with prejudice,

that dismissal will act as res judicata and prevent the County from filing any additional claims or suits against PNM concerning alleged violations of the Code by the powerline project.").

Thus, given that the dismissal with prejudice of the patent counterclaims would have res judicata and collateral estoppel effect, there is no longer a controversy regarding the patent dispute that is part of this lawsuit.  In an analogous situation, the United States Court of Appeals for the Seventh Circuit held that "the dismissal with prejudice" of copyright infringement claims "rendered moot two . . . counterclaims seeking declaratory relief," including one seeking a "declaration of noninfringement of copyrights."  Mostly Memories, Inc. v. For Your Ease Only, Inc., 526 F.3d 1093, 1098 n.1 (7th Cir. 2008).  Both parties' pleadings reveal that this patent-infringement dispute revolves around GFCIs and the '124 and '151 patents.  See Complaint ¶¶ 15-17, 26, 36-37, at 4-6, 8 (discussing GFCIs and how they relate to this patent dispute); Answer ¶¶ 139-45, 153, 159, at 16-18, 20-21 (relying on infringement of the '124 and '151 patents that relate to GFCI products as the basis for the patent counterclaims).  Count II alleges that "[t]he Plaintiffs do not infringe any claim of the '124 and '151 patents because the Settlement Agreement extended an express or implied license to Plaintiffs to these patents."  Complaint ¶ 46, at 10.  Count II also asserts that the "Plaintiffs do not infringe any claim of the '124 and '151 patents because Leviton is legally or equitably estopped from asserting infringement of these patents against Plaintiffs for at least the Licensed Products."  Complaint ¶ 47, at 10.  The Plaintiffs seek in Count II "a declaratory judgment that Plaintiffs do not infringe any claim of the '124 or '151 patents because Plaintiffs received an express or implied license under the Settlement Agreement to the '124 and '151 patents" and a declaratory judgment based on legal or equitable estoppel.  Complaint ¶¶ 50-51, at 10-11.  Count II is effectively the mirror image of the patent counterclaims Leviton Manufacturing has asserted, because Leviton Manufacturing asserts that the Plaintiffs have engaged in activities that infringe on

the '124 and '151 patents.  See Answer ¶¶ 150-61, at 19-22.  Those patent-infringement counterclaims, for res judicata purposes, include "all claims or legal theories of recovery that arise from the same transaction, event, or occurrence."  Nwosun v. Gen. Mills Rests., Inc., 124 F.3d at 1257.  Taking into account the res judicata effect of the dismissal with prejudice, Leviton Manufacturing will not, based on res judicata, be able to litigate any patent-infringement claims relating to GFCIs, and the '124 and '151 patents, that had arisen as of the time of filing the Answer against the Plaintiffs.  Thus, the entire patent-infringement dispute between the parties would be subject to a res judicata bar based on the dismissal with prejudice.  Res judicata is not some illusory defense and can have great power.  For instance, it is much more enforceable in nature than a company executive's statement that his company had no intention to prosecute infringement claims, which would not moot a patent dispute.  See SanDisk Corp. v. STMicroelectronics, Inc., 480 F.3d 1372, 1376, 1382-83 (Fed. Cir. 2007)(finding that the statement "ST has absolutely no plan whatsoever to sue SanDisk" was not sufficient to moot the controversy for declaratory judgment purposes).

### B.       THERE IS NOT A SUFFICIENTLY IMMEDIATE AND REAL FUTURE CONTROVERSY TO WARRANT THE ISSUANCE OF A DECLARATORY JUDGMENT.

The Court must now assess whether there is a sufficient likelihood of a future dispute to warrant the issuance of a declaratory judgment on Count II, which seeks to litigate the existence and scope of an implied license.  The Court acknowledges that there has been a history of litigation between the parties.  Nevertheless, "[a] party seeking to base jurisdiction on the Declaratory Judgment Act bears the burden of proving that the facts alleged, under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  Benitec Austl.,

Ltd. v. Nucleonics, Inc., 495 F.3d at 1343 (emphasis added)(quoting MedImmune, Inc. v.
Genentech, Inc., 549 U.S. at 127).

Patent cases are somewhat different from many cases where mootness issues arise in that the
only significant misconduct in which the patent holder can engage to harm the alleged infringer is
to continue to prosecute claims of patent infringement.  Once that ability has been taken away
through some means, such as dismissal of the patent-infringement claims with prejudice or through
a covenant not to sue, there is relatively little the patent holder can do to harm the interests of the
alleged infringer  -- at least as far as patent law is concerned.  Mootness sometimes arises in
situations where there are ongoing civil-rights violations, where the alleged wrongdoer can engage
in conduct outside the courtroom that will continue to harm the plaintiff.  See Cnty. of L.A. v. Davis,
440 U.S. at 626-34 (analyzing mootness in the context of a case where the district court enjoined
the hiring practice of a county fire department as violative of 42 U.S.C. § 1981).  Some alleged
misconduct, like conduct in violation of anti-trust laws, can be relatively complex and deep-seated
in that it is difficult to resolve the underlying problem without court intervention:

> When defendants are shown to have settled into a continuing practice or
> entered into a conspiracy violative of anti-trust laws, courts will not assume that it
> has been abandoned without clear proof.  It is the duty of the courts to beware of
> efforts to defeat injunctive relief by protestations of repentance and reform,
> especially when abandonment seems timed to anticipate suit, and there is probability
> of resumption.

United States v. Or. State Med. Soc'y, 343 U.S. at 695-96.

In narrower circumstances, courts have recognized similar concerns in patent cases when
there is a immediate and actual dispute relating to future activity, such as in a case where a covenant
not to sue does not preclude future infringement actions should the alleged infringer recommence
sales of the accused infringing device after the dismissal of the pending action.  See Revolution

Eyewear, Inc. v. Aspex Eyewear, Inc., 556 F.3d at 1297.  There may also be, under some circumstances, a sufficiently concrete future dispute to issue a declaratory judgment whether future products the alleged infringer will make, sell, or use violate patents, although courts have required more than a general "fear of litigation over future products." Amana Refrigeration, Inc. v. Quadlux, Inc., 172 F.3d 852, 855 (Fed. Cir. 1999)("The Quadlux covenant ensures that Quadlux is forever estopped from asserting liability against Amana in connection with any products that Amana advertised, manufactured, marketed, or sold before July 31, 1997, and that resolves the controversy.").  For instance, the Federal Circuit found a declaratory judgment action inappropriate for lack of a case-or-controversy when the party seeking the declaratory judgment regarding whether future products it may design were infringing when the party "never contended that it has already taken meaningful preparatory steps toward an infringing activity by planning to make a new product that may later be said to infringe." Super Sack Mfg. Corp. v. Chase Packaging Corp., 57 F.3d at 1059-60.

While the parties may become involved in some dispute in the future, that dispute is not sufficiently immediate and real to warrant the issuance of a declaratory judgment to determine the existence and scope of an implied license.  The Plaintiffs have directed the Court to no activities in which they plan to engage in the future that this lawsuit does not cover, such as alternative product lines not in existence or not known to Leviton Manufacturing before it asserted its counterclaims, that would require the Court to issue a declaratory judgment deciding the existence and the scope of an implied license.  The dismissal with prejudice addresses all infringement matters covered in this case, so the Court would be deciding the existence and scope of an implied license in a vacuum. As the Federal Circuit has stated in the context of establishing whether a case-or-controversy exists for constitutional purposes:

> A party seeking to base jurisdiction on the Declaratory Judgment Act bears the burden of proving that the facts alleged, under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

Benitec Austl., Ltd. v. Nucleonics, Inc., 495 F.3d at 1343 (quoting MedImmune, Inc. v. Genentech, Inc., 549 U.S. at 127).  The Plaintiffs at this point are attempting to seek "an advisory opinion as to the validity of a defense" based on the existence of an implied license through a declaratory judgment action.  Coffman v. Breeze Corps., Inc., 323 U.S. 316, 324 (1945).  Accord Calderon v. Ashmus, 523 U.S. at 748 (recognizing "the need . . . to prevent federal-court litigants from seeking by declaratory judgment to litigate a single issue in a dispute that must await another lawsuit for complete resolution").

Additionally, there is not a sufficient record of a dispute looming on the horizon for the Court to conclude there is a live controversy.  There may be another dispute one day between these same parties, but if the Plaintiffs wanted to litigate Count II to judgment, they could have opposed the aspect of Leviton's MTD seeking to dismiss with prejudice the patent-infringement counterclaims.  It is significant that both the Federal Circuit and Tenth Circuit have found that parties agreeing to dismissal with prejudice of claims moots a determination of the merits of those claims.  See Mass. Inst. of Tech. & Elecs. for Imaging, Inc. v. Abacus Software, 462 F.3d 1344, 1359-60 (Fed. Cir. 2006); Vakas v. Rodriguez, 728 F.2d 1293, 1295-96 (10th Cir. 1984).  The Federal Circuit, for instance, has stated:

> First, MIT argues that the district court erred in granting Fry's motion for summary judgment of non-infringement when it improperly determined that an infringing sale requires a completely assembled system.  Second, MIT argues the district court erred in granting Arcsoft's and Fry's motion for partial summary judgment under the marking statute when it concluded that certain letters EFI sent to the appellees failed to give actual notice of infringement under section 287(a).  Both these conclusions were reached in rulings in favor of Fry's and Arcsoft.  MIT agreed to dismiss both

parties with prejudice, so challenges to those rulings are moot. <u>U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship</u>, 513 U.S. 18, 25 . . . (1994)("Where mootness results from settlement . . . the losing party has voluntarily forfeited his legal remedy by the ordinary process[] of appeal."). MIT argues that these rulings "may" limit their damages award, but this does not affect the mootness of the particular rulings at this stage of the proceedings. <u>See</u> Reply Brief for Plaintiff-Appellant at 47. If the district court in the future relies on these rulings to limit damages with respect to a non-dismissed party, that reliance will give rise to a new ruling that may then be appealed (if otherwise appropriate).

<u>Mass. Inst. of Tech. & Elecs. for Imaging, Inc. v. Abacus Software</u>, 462 F.3d at 1359-60. The Tenth Circuit has similarly concluded:

> Additional issues that the appellant attempts to raise on appeal deal with the denial of injunctive relief. While these issues are also likely foreclosed by the <u>Middlesex[ County Ethics Committee v. Garden State Bar Ass'n</u>, 457 U.S. 423 (1982)][10] abstentionism doctrine, they need not be considered by this court. In early 1983 the parties entered into a stipulation and dismissal of the pending disciplinary action. The stipulation was substantially identical to the earlier offer of settlement by the Board. By virtue of this settlement and dismissal no case or controversy now exists on which to base legal objections to the trial court's refusal to enjoin future disciplinary action. These issues are mooted by the agreed stipulation and dismissal, and appellate review is unwarranted. <u>See</u> <u>Hall v. Beals</u>, 396 U.S. 45, 90 . . . (1969).

<u>Vakas v. Rodriguez</u>, 728 F.2d at 1295-96. The Plaintiffs and Leviton Manufacturing have agreed to dismissal of the patent-infringement counterclaims with prejudice, so the merits of those claims are now moot.

As the Federal Circuit and various courts have noted, an issue that is once moot may at some point in the future no longer be moot based on intervening events. <u>See</u> <u>Mass. Inst. of Tech. & Elecs. for Imaging, Inc. v. Abacus Software</u>, 462 F.3d at 1359-60 ("If the district court in the future relies on these rulings to limit damages with respect to a non-dismissed party, that reliance will give rise to a new ruling that may then be appealed (if otherwise appropriate)."). For instance, an appellate

---

[10]<u>Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n</u>, 457 U.S. 423 (recognizing that federal courts should abstain from hearing cases implicating certain disputes when there are ongoing state-disciplinary proceedings against an attorney to avoid interfering with those proceedings).

court may reverse the district court on an issue, and other issues in the case may no longer be moot.

See McClure v. Indep. Sch. Dist. No. 16, 228 F.3d 1205, 1215 (10th Cir. 2000)("In light of our treatment of the confrontation issue, we conclude the biased-tribunal claim is no longer moot."); Liquid Dynamics Corp. v. Vaughan Co., Inc., 355 F.3d 1361, 1370 (Fed. Cir. 2004)("The district court mooted Vaughan's counterclaims of invalidity and unenforceability . . . . Because we reversed the summary judgment of non-infringement, these counterclaims are no longer moot and must be reinstated.").  If one of the parties were to, for example, ask the Court to permit it to withdraw from the stipulated dismissal of the patent counterclaims or to seek some form of post-judgment relief on the basis that the agreement to dismiss the claims was predicated on fraudulent conduct, those claims would no longer be moot.  See Rimbert v. Eli Lilly & Co., 647 F.3d 1247, 1251 (10th Cir. 2011)("[D]istrict courts generally remain free to reconsider their earlier interlocutory orders."); Sawyer v. USAA Ins. Co., No. 11-0523, 2012 WL 843639, at *25 (D.N.M. Mar. 8, 2012)(Browning, J.)(defendants moved to set aside default judgment)("Because the state court had jurisdiction to reconsider its entry of default judgment, its judgment did not terminate the case or controversy, and the Defendants properly removed the case."); Nieto v. Univ. of N.M., 727 F.Supp.2d at 1193 ("If a trial court judgment, which might yet be upset on appeal, were to extinguish a case or controversy between two parties, [no appellate courts] would ever have jurisdiction, because Article III limits the judicial power of all federal courts, not merely federal district courts.").  Stipulation of dismissals with prejudice are unique, however, because the dismissal causes the parties to forfeit their right to litigate the merits of the claims in a case, thus making the claims moot for case-or-controversy purposes absent the assertion by one of the parties of unique equitable considerations that counsel in favor of a court vacating the agreement:

    Where mootness results from settlement, however, the losing party has

> voluntarily forfeited his legal remedy by the ordinary processes of appeal or
> certiorari, thereby surrendering his claim to the equitable remedy of vacatur.[11]  The
> judgment is not unreviewable, but simply unreviewed by his own choice.  The denial
> of vacatur is merely one application of the principle that "[a] suitor's conduct in
> relation to the matter at hand may disentitle him to the relief he seeks."

United States v. Bancorp Mortg. Co. v. Bonner Mall P'ship, 413 U.S. at 25.  Thus, absent the

assertion of some equitable considerations that arise in the future that would convince the Court to

vacate the dismissal with prejudice, the patent-infringement counterclaims are moot.  Cf. Nieto v.

Univ. of N.M., 727 F.Supp.2d at 1194 ("So long as there exist issues to be resolved at some level

of judicial review, there exists a case or controversy and a basis for federal jurisdiction.").

Otherwise, parties could circumvent a settlement and continue to litigate the merits of a case after

all parties had settled the case by agreeing to dismissal of all claims with prejudice.

Notably, a case is generally not moot even when a court enters final judgment in a case.  See,

e.g., Sawyer v. USAA Ins. Co., 2012 WL 843639, at *25 ("Because the state court had jurisdiction

to reconsider its entry of default judgment, its judgment did not terminate the case or controversy,

and the Defendants properly removed the case.").  The Court recognizes those principles and stands

by them, because, "[s]o long as there exist issues to be resolved at some level of judicial review,

there exists a case or controversy and a basis for federal jurisdiction," even if the only available

relief is in the form of a post-judgment motion or an appeal.  Nieto v. Univ. of N.M., 727 F.Supp.2d

at 1194.  In Sawyer v. USAA Insurance Co. the Court faced a mootness question where the

defendants had timely removed the case to federal court following the entry of a default judgment

in state court.  See Sawyer v. USAA Ins. Co., 2012 WL 843639, at *1-4.  In Nieto v. University of

---

[11]Black's Law Dictionary defines the term vacatur as "[t]he act of annuling or setting aside"
or "[a] rule or order by which a proceeding is vacated."  Black's Law Dictionary 1688 (9th ed.
2009).

New Mexico, the Court faced a mootness question where the defendant had timely removed the case to federal court following the state court's dismissal for failure to prosecute the claims.  See Nieto v. Univ. of N.M., 727 F.Supp.2d at 1179-80.  In both cases, there was still a dispute regarding the underlying merits of the claims.  The Court was not addressing a situation where there was a settlement or a stipulation of dismissal with prejudice -- in other words a situation where the parties had formally agreed to the merits of a claim.  There was an ongoing dispute regarding whether the entry of judgment was appropriate.  The Supreme Court, Tenth Circuit, and the Federal Circuit have recognized that an agreement regarding the merits of a claim in the form of a settlement or a stipulation of dismissal with prejudice moots the merits of the claim.  See United States v. Bancorp Mortg. Co. v. Bonner Mall P'ship, 413 U.S. at 25 ("Where mootness results from settlement, however, the losing party has voluntarily forfeited his legal remedy by the ordinary processes of appeal or certiorari . . . ."); Mass. Inst. of Tech. & Elecs. for Imaging, Inc. v. Abacus Software, 462 F.3d at 1359-60 ("MIT agreed to dismiss both parties with prejudice, so challenges to those rulings are moot."); Vakas v. Rodriguez, 728 F.2d at 1295-96 ("These issues are mooted by the agreed stipulation and dismissal, and appellate review is unwarranted.").  While there is always a prospect of future litigation between parties who have some history of litigation, particularly among the parties here, there does not appear to be any concrete dispute in the foreseeable future.  Until a party seeks to vacate the settlement or agreement, the merits of that claim are moot for constitutional purposes, because the party has "voluntarily forfeited his legal remedy."  United States v. Bancorp Mortg. Co. v. Bonner Mall P'ship, 413 U.S. at 25.  That result makes sense, because permitting parties to litigate the merits of a claim that the parties have agreed to dismiss with prejudice -- at least until that agreement has been set aside or until it is clear that there will be a new dispute between the parties -- would frustrate the goals of settlement and would result in courts rendering

-49-

advisory opinions on the merits of claims when the parties have agreed what the merits of those

claims are.

This case is further distinguishable from a situation where a party seeks to continue to litigate

a claim asserting that a patent is invalid after a finding a non-infringement.  See Cardinal Chem. Co.

v. Morton Int'l, Inc., 508 U.S. 83, 99-101 (1993)(holding that the Federal Circuit improperly vacated

a finding of invalidity on appeal because the trial court had also found that there was no

infringement).[12]  A claim "questioning the validity or enforceability of a patent raises issues beyond

_____

[12]Notably, Cardinal Chemical Co. v. Morton International, Inc. arose in a unique procedural
context and addressed intermediate appellate court jurisdiction, which the Supreme Court
acknowledged by emphasizing: "[T]he issue[s] before us, therefore concern the jurisdiction of an
intermediate appellate court -- not the jurisdiction of either a trial court or this Court.  In the trial
court, of course, a party seeking a declaratory judgment has the burden of establishing the existence
of an actual case or controversy."  508 U.S. at 95.  The Federal Circuit has further explained that the
Supreme Court's Cardinal Chemical Co. v. Morton International, Inc. decision is limited in that it
did not change the ultimate burden of a the party seeking the declaratory judgment to establish that
a case or controversy exists at the district court level, but rather corrected the Federal Circuit's
interpretation of its intermediate appellate jurisdiction following the full litigation of infringement
and patent validity claims:

> The dissent's view that Cardinal Chemical holds that "the burden shifts to the
> party seeking to divest the court of jurisdiction to prove there is no longer a current
> case or controversy" reads more into the language of Cardinal Chemical than is
> justified.  First, the Supreme Court makes clear at the outset of its opinion that "[the]
> practice [the Federal Circuit's uniform practice of declaring the issue of validity
> moot if it affirms the district court's finding of noninfringement], [sic] and the issue
> before us, therefore concern the jurisdiction of an intermediate appellate court -- not
> the jurisdiction of either a trial court or this Court.  In the trial court, of course, a
> party seeking a declaratory judgment has the burden of establishing the existence of
> an actual case or controversy."  Further, the Court only said that "[i]f a party to an
> appeal suggests that the controversy has, since the rendering of the judgment below,
> become moot, that party bears the burden of coming forward with subsequent events
> that have produced that alleged result."  The Court did not hold that the ultimate
> burden of proof in the trial court was on other than the party seeking to invoke
> declaratory judgment jurisdiction.

Benitec Austl., Ltd. v. Nucleonics, Inc., 495 F.3d 1340, 1345 (10th Cir. 2007)(alterations in
original)(emphasis in original)(citations omitted).

the initial claim for infringement that are not disposed of by a decision of non-infringement." Fort

James Corp. v. Solo Cup Co., 412 F.3d 1340, 1348-49 (Fed. Cir. 2005).  The current case also

presents no concerns about "the importance to the public at large of resolving questions of patent

validity." Cardinal Chem. Co. v. Morton Int'l, Inc., 508 U.S. at 99-101.  When a court declares a

patent invalid, the patent holder can never enforce that patent against anyone again -- both the

parties to the case and anyone else who might be accused of infringement -- under issue-preclusion

principles.   See Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found., 402 U.S. 313, 334

(1971)("Whatever legitimate concern there may be about the intricacies of some patent suits, it is

insufficient in and of itself to justify patentees relitigating validity issues as long as new defendants

are available.").  No such situation is present here regarding Count II, as Count II relies upon a

potential implied license granted exclusively to the Plaintiffs by contract.

Other cases upon which the Plaintiffs rely are also distinguishable.  There has not been an

ultimate adjudication of the existence and scope of the implied license based on the Federal Circuit's

opinion affirming the Court's grant of a preliminary injunction.  See University of Tex. v.

Camenisch, 451 U.S. at 395 ("[T]he findings of fact and conclusions of law made by a court

granting a preliminary injunction are not binding at trial on the merits.").  Thus, reliance on Fort

James Corp. v. Solo Cup Co. is not appropriate, because that case dealt with a party seeking to moot

a claim that the patent was unenforceable by entering into a covenant not to sue after a trial on the

merits of an infringement claim:

> The district court's literal application of the holding of Super Sack fails to
> comprehend the unique procedural posture of the instant case. In Super Sack and its
> progeny, the patentee's covenant not to sue was filed prior to consideration or
> resolution of the underlying infringement claim.  In such circumstances, the promise
> not to sue obviated any reasonable apprehension that the declaratory judgment
> plaintiff might have of being held liable for its acts of infringement. Here, however,
> the Post-Verdict Covenant had no effect on Fort James's claim for infringement,

because that controversy had already been resolved by the jury's verdict.   The question then becomes whether the court retained jurisdiction to hear Solo Cup's declaratory judgment counterclaim after the jury determined that Solo Cup's products do not infringe Fort James's patents.

412 F.3d at 1348.   This case does not fit within the "unique procedural posture" of <u>Fort James Corp.</u> <u>v. Solo Cup Co.</u>   412 F.3d at 1348.   "Leviton's unilateral action to dismiss is" not "meaningless" as the Plaintiffs argue, because the Court has not entered summary judgment on or had a trial to determine the merits of Count II.   Response to Leviton's MTD at 8.   It may be that the Court would be likely to grant summary in the Plaintiffs' favor on Count II if the patent counterclaims had not been dismissed with prejudice, but the fact remains that it has not yet entered summary judgment. Consequently, the Court concludes that dismissal of Count II without prejudice is appropriate.

The Court is not without concern about its conclusion.   The Plaintiffs came to the Court to secure a declaratory judgment to determine the existence and scope of an implied license that would protect them from infringement charges related to the '124 and '151 patents.   They then secured from the Federal Circuit a opinion affirming the Court's grant of a preliminary injunction.   The Federal Circuit's opinion provides a strong basis for ultimately concluding that an implied license exists and would protect the Plaintiffs from infringement charges.   Before the Court is able to enter a judgment in favor of the Plaintiffs, the Court is now dismissing Count II seeking a declaratory judgment as moot.   While troubling, the result is a product of a superseding event: the dismissal of the patent-infringement counterclaims with prejudice.   While the dismissal with prejudice of those patent-infringement counterclaims does not give the Plaintiffs what they want in the nice neat package they might prefer, it effectively gives them what they need: an end to the litigation over GFCI-related products as they implicate the '124 and '151 patents.   Accordingly, the merits of the patent-infringement dispute are moot.

C.    THE COURT NEED NOT DECIDE WHETHER, IT IF HAS JURISDICTION,
IT WOULD, BASED ON THE PROCEDURAL POSTURE OF THIS CASE,
DECLINE TO EXERCISE JURISDICTION OVER COUNT II UNDER THE
DECLARATORY JUDGMENT ACT.

Notably, courts may properly decline to exercise jurisdiction on discretionary grounds before

addressing other jurisdictional considerations, including whether a case or controversy exists:

> It is hardly novel for a federal court to choose among threshold grounds for
> denying audience to a case on the merits.  Thus, as the Court observed in Steel Co.[
> v. Citizens for a Better Env't, 523 U.S. 83 (1998)], district courts do not overstep
> Article III limits when they decline jurisdiction of state-law claims on discretionary
> grounds without determining whether those claims fall within their pendent
> jurisdiction, see Moor v. Cnty. of Alameda, 411 U.S. 693, 715-716 . . . (1973), or
> abstain under Younger v. Harris, 401 U.S. 37 . . . (1971), without deciding whether
> the parties present a case or controversy, see Ellis v. Dyson, 421 U.S. 426,
> 433-434 . . . (1975).

Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 585 (1999).  Given the procedural posture of the

patent-infringement dispute, there may also be grounds to decline the exercise of jurisdiction under

the Declaratory Judgment Act.  The Supreme Court has recognized that district courts have some

discretion to decline to entertain a declaratory judgment action:

> We agree, for all practical purposes, with Professor Borchard, who observed
> half a century ago that "[t]here is . . . nothing automatic or obligatory about the
> assumption of 'jurisdiction' by a federal court" to hear a declaratory judgment
> action. By the Declaratory Judgment Act, Congress sought to place a remedial arrow
> in the district court's quiver; it created an opportunity, rather than a duty, to grant a
> new form of relief to qualifying litigants.  Consistent with the nonobligatory nature
> of the remedy, a district court is authorized, in the sound exercise of its discretion,
> to stay or to dismiss an action seeking a declaratory judgment before trial or after all
> arguments have drawn to a close.  In the declaratory judgment context, the normal
> principle that federal courts should adjudicate claims within their jurisdiction yields
> to considerations of practicality and wise judicial administration.

Wilton v. Seven Falls Co., 515 U.S. at 288 (footnote omitted)(citations omitted).  For instance,

"courts . . . will refuse to entertain a declaratory-judgment action if the controversy has been

effectively settled by the decision of some other tribunal or if otherwise there is no need for the

declaration." 10B C. Wright, A. Miller, M. Kane & R. Marcus, <u>Federal Practice and Procedure</u> § 2759, at 550 (3d ed. 1998)(footnote omitted).  The Tenth Circuit has outlined five factors to make a determination on how to exercise this discretion:

> (1) whether a declaratory action would settle the controversy; (2) whether it would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to res judicata"; (4) whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

<u>State Farm Fire & Cas. Co. v. Mhoon</u>, 31 F.3d at 983.

First, while there may be some future controversy between the parties, there are no developed facts or contours to the controversy to guide the Court while it is determining the existence and scope of an implied license.  The patent-infringement dispute is moot, because Leviton Manufacturing has dismissed its infringement claims with prejudice.  Anything the Court would say may not settle any future controversies given the lack of context.  Its holdings would be dicta in the absence of a real dispute.  While the Court acknowledges that there has been a history of controversy between the parties, it is difficult to say that the Court can fix that problem at this stage.  Second, the lack of a concrete controversy would make a declaratory judgment unhelpful in clarifying the legal relations at issue in this case.  Third, it does not appear that the Plaintiffs are engaging in procedural fencing or in a race to res judicata in seeking a declaratory judgment.  Fourth, there does not appear to be a situation where issuing a declaratory would increase friction with state courts.  Fifth, there is an alternative remedy that would be more effective in resolving the current dispute -- accepting the parties' agreement to dismiss the patent counterclaims with prejudice and then proceed to entry of final judgment to give that dismissal with prejudice res judicata and collateral estoppel effect.  Proceeding to final judgment would be highly effective in permitting the Plaintiffs to

preclude Leviton Manufacturing from asserting patent infringement for any of the activity that arises out of the same transaction or occurrence as the patent-infringement dispute related to GFCIs as well as the '124 and '151 patents.  Given the dismissal of the patent counterclaims with prejudice, the patent-infringement dispute between the parties has effectively been resolved.  The Court would be deciding the existence and scope of an implied license in the absence of proper context and developed facts given that patent infringement is no longer at issue.  See Strawberry Water Users Ass'n v. United States, 576 F.3d 1133, 1142-43 (10th Cir. 2009)(recognizing that the district court did not abuse its discretion in declining to exercise jurisdiction over a dispute when it "seem[ed] premature at this point to attempt to fashion some form of affirmative equitable relief that would compel the United States or CUWCD to respond in a particular manner to a power development proposal that SWUA has neither formulated nor submitted").  The applicable factors may weigh in favor of declining an exercise of jurisdiction under the Declaratory Judgment Act.  The analysis might be different if the Plaintiffs still sought to declare Leviton Manufacturing's patents to be unenforceable or invalid, because the public would have a greater interest in a resolution of the validity of the patents at issue.  This dispute, however, is largely isolated to the parties in this case. In any case, the Court need not decide whether declining to exercise jurisdiction over Count II for discretionary reasons, because Count II is moot.

## V.   THE COURT DECLINES TO EXERCISE SUPPLEMENTAL JURISDICTION OVER THE REMAINING STATE-LAW CLAIMS, BUT RETAINS JURISDICTION OVER THE DETERMINATION OF ATTORNEY'S FEES UNDER 35 U.S.C. § 285.

Based on the Court granting GPG's MTD, the dismissals of claims and counterclaims to which the parties have agreed, and the Court's dismissal of Count II in the Plaintiffs' Complaint as

moot, there remain only three Counts in this case: (i) Count I; (ii) Count IX; and (iii) Count X.[13] There remain no counterclaims.  Count I is a declaratory judgment claim seeking a declaration that "a mandatory and exclusive forum selection clause" exists in the CSA and that Leviton Manufacturing breached this clause.  Complaint ¶¶ 42-44, at 9-10.  Count IX seeks an award of attorney's fees on the basis that this case is an exceptional case under 35 U.S.C. § 285.  See Complaint ¶ 112, at 22.  Count X seeks damages on the basis that Leviton Manufacturing breached the CSA.  See Complaint ¶¶ 114-15, at 23.

While 35 U.S.C. § 285 is a federal statute, it does not provide a federal cause of action for jurisdictional purposes.  "As a general matter, . . . a claim for attorney's fees is not part of the merits of the action to which the fees pertain."  Budinich v. Becton Dickinson & Co., 486 U.S. at 200.  In fact, 35 U.S.C. § 285 expressly states that it permits the award of attorney's fees only "to the prevailing party."  35 U.S.C. § 285.  The Supreme Court has recognized that attorney's fees are awarded in a like manner as costs in an action.  See Budinich v. Becton Dickinson & Co., 486 U.S. at 200 ("At common law, attorney's fees were regarded as an element of 'costs' awarded to the prevailing party.").  Rule 58(b)(2) of the Federal Rules of Civil Procedure directs courts to "promptly approve the form of the judgment, which the clerk must promptly enter."  Fed. R. Civ. P. (b)(2).  Rule 58 "permits, but does not require, the court to delay the finality of the judgment for appellate purposes under revised Fed.R.App.P. 4(a) until the [attorney's] fee[s] dispute is decided."  Fed. R. Civ. P. 58 advisory committee's note to 1993 amendment.

---

[13]The Court may determine that some claims, but not all of the claims, fail to meet the requirements for a case or controversy.  See United Steelworkers of Am., Local 2116 v. Cyclops Corp., 860 F.2d 189, 191 (6th Cir. 1988)("We agree with the district court that summary judgment was appropriate on the ERISA claims and some of the contractual claims.  However, we believe that plaintiffs prospective contractual claims do not present a present, justiciable controversy and therefore we dismiss them as not ripe for adjudication.").

28 U.S.C. § 1367(c)(3) provides: "The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c).[14]  The Tenth Circuit reviews a district court's decision not to exercise jurisdiction under 28 U.S.C. § 1367(c) for abuse of discretion.  See Nielander v. Bd. of Cnty. Comm'rs, 582 F.3d 1155, 1172 (10th Cir. 2009).  The Tenth Circuit has held: "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."  Koch v. City of Del City, 660 F.3d at 1228, 1248 (10th Cir. 2011)(quoting Smith v. City of Enid ex rel. Enid City Comm'n, 149 F.3d 1151, 1156 (10th Cir. 1998)).  The Supreme Court has also recognized:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.  Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

United Mine Workers of Amer. v. Gibbs, 383 U.S. at 726.  This Court has previously stated that a district court should usually decline to exercise supplemental jurisdiction when 28 U.S.C. § 1367(c)

---

[14]"When reviewing 'procedural matters not unique to the areas that are exclusively assigned to the Federal Circuit,' th[e Federal Circuit] generally applies the procedural law of the regional circuit in which the case originated."  Tex. Instruments Inc. v. Tessera, Inc., 231 F.3d at 1328.  The Federal Circuit has noted, however, that it will apply "its own body of precedent to uniformly deal with procedural matters arising from substantive issues in areas of law within the unique jurisdiction of this circuit."  Tex. Instruments Inc. v. Tessera, Inc., 231 F.3d at 1328.  Procedural issues regarding supplemental jurisdiction can arise in any federal case and are not unique to the Federal Circuit.  See, e.g., United Mine Workers of Am. v. Gibbs, 383 U.S. at 725-26.  The matters at issue in this supplemental-jurisdiction question relate to whether the Court should decline to exercise supplemental jurisdiction under one of the statutory bases listed in 28 U.S.C. § 1367(c).  These procedural matters do not arise from substantive issues in an area of law within the unique jurisdiction of the Federal Circuit.  See Koch v. City of Del City, 660 F.3d 1228, 1234-35, 1248 (10th Cir. 2011)(reviewing a district court's decision to decline to exercise supplemental jurisdiction in the context of a 42 U.S.C. § 1983 claim and state-law claims for "assault, battery, and false arrest").  Thus, the Court will rely upon precedent from the Federal Circuit only to the extent it is persuasive, and will remain bound by Tenth Circuit and Supreme Court precedent.

applies.  See Armijo v. New Mexico, No. 08-0336, 2009 WL 3672828, at *4 (D.N.M. Sept. 30, 2009)(Browning, J.)("The Supreme Court and the Tenth Circuit have not only acknowledged such a result, they have encouraged it.").  Additionally, the Tenth Circuit has recognized that a district court does not commit an "abuse of discretion" when it declines to exercise supplemental jurisdiction over a claim "under 28 U.S.C. § 1367(c)(3) . . . where it 'has dismissed all claims over which it has original jurisdiction[.]'"  Muller v. Culbertson, 408 F.App'x 194, 197 (10th Cir. 2011)(unpublished).

The Court concludes that dismissal of the remaining state law claims without prejudice is proper in this case.[15]  The Court has reviewed whether any federal claims remain in the case.  Count I and Count X are state-law causes of action, and Count IX is a request for attorney's fees rather than a separate cause of action.  Given the Tenth Circuit's guidance that "[w]hen all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims," the Court concludes that dismissing the remaining state law claims without prejudice is the appropriate resolution of this matter.  Koch v. City of Del City, 660 F.3d at 1248 (quoting Smith v. City of Enid ex rel. Enid City Comm'n, 149 F.3d at 1156).  A state court may afford the Plaintiffs relief for breach of contract.  The res judicata and collateral estoppel effect of the Court's final judgment will also provide the Plaintiffs with a mechanism to prevent Leviton Manufacturing from asserting infringement claims against them in any forum.  Consequently, the Court will dismiss Count I and X without prejudice.  The Court retains jurisdiction over the request

--------

[15]The Court notes that it would also be appropriate to decline the exercise of supplemental jurisdiction over Counterclaim III, the counterclaim asserting misappropriation of trade secrets. Counterclaim III is a state-law cause of action asserted under Georgia law, and the Court is declining to exercise supplemental jurisdiction over the state-law claims in this case.  See Answer ¶ 173, at 22 (asserting a claim for misappropriation of trade secrets "under Georgia Code § 10-1-763").

for attorney's fees under 35 U.S.C. § 285.  "A request for attorney's fees . . . raises legal issues collateral to the main cause of action," White v. N.H. Dep't of Emp't Sec., 455 U.S. 445, 451 (1982), and can be decided after the final judgment is entered, see Fed. R. Civ. P. 58 advisory committee's note to 1993 amendment (recognizing that rule 58 "permits, but does not require, the court to delay the finality of the judgment for appellate purposes under revised Fed.R.App.P. 4(a) until the [attorney's] fee[s] dispute is decided"); White v. N.H. Dep't of Emp't Sec., 455 U.S. at 451 (contemplating the use of "a postjudgment motion" to obtain "attorney's fees").

## VI.   THE COURT WILL DENY THE PLAINTIFFS' MSJ AND LEVITON'S MSJ SEEKING SUMMARY JUDGMENT ON COUNTS I AND II AS MOOT.

The Plaintiffs have, since the February 16, 2012, hearing, filed a separate motion for summary judgment in which they seek summary judgment in their favor on Counts I and II.  See Plaintiffs' MSJ at 1.  On March 26, 2012, Leviton Manufacturing filed a cross-motion for summary judgment on Count I an II.  See Leviton's MSJ at 1-2.  The Court has found that Count II is moot and has declined to exercise jurisdiction over Count I.  Consequently, there remains no issues to be decided on Counts I and II.  The Court, thus, will deny the Plaintiffs' MSJ and Leviton's MSJ as moot.

## VII.   THE COURT WILL PROCEED TO ENTER FINAL JUDGMENT ON THE CLAIMS ASSERTED IN THIS CASE AND WILL DECIDE THE ISSUE OF ATTORNEY'S FEES SEPARATELY.

"As a general matter, . . . a claim for attorney's fees is not part of the merits of the action to which the fees pertain."  Budinich v. Becton Dickinson & Co., 486 U.S. at 200.  The Supreme Court has recognized that attorney's fees are awarded in a like manner as costs in an action.  See Budinich v. Becton Dickinson & Co., 486 U.S. at 200 ("At common law, attorney's fees were regarded as an element of 'costs' awarded to the prevailing party.").  Rule 58(b)(2) of the Federal Rules of Civil

-59-

Procedure directs courts to "promptly approve the form of the judgment, which the clerk must promptly enter." Fed. R. Civ. P. (b)(2). Rule 58 "permits, but does not require, the court to delay the finality of the judgment for appellate purposes under revised Fed.R.App.P. 4(a) until the [attorney's] fee[s] dispute is decided." Fed. R. Civ. P. 58 advisory committee's note to 1993 amendment.

The Court believes it is more appropriate to promptly enter a final judgment on the claims asserted in this case before deciding the issue of attorney's fees. Entering judgment will give the Court's rulings res judicata and collateral estoppel effect. Because the Court is not entertaining Count II -- which the Court determines is moot -- the Court believes entering final judgment promptly is appropriate to allow the Plaintiffs to enforce the dismissal with prejudice of the patent counterclaims. See Cnty. of Santa Fe, N.M. v. Pub. Serv. Co. of N.M., 311 F.3d at 1048 ("But if the County is allowed to dismiss its suit with prejudice, that dismissal will act as res judicata and prevent the County from filing any additional claims or suits against PNM concerning alleged violations of the Code by the powerline project."). Entering the final judgment promptly could avoid additional litigation in other forums. If the Court delayed entering final judgment, Leviton Manufacturing could potentially file a similar lawsuit in another forum and require the Plaintiffs to incur additional litigation expenses. The Court still retains jurisdiction over the request for attorney's fees under 35 U.S.C. § 285 as collateral to the merits of the case. See White v. N.H. Dep't of Emp't Sec., 455 U.S. at 451 ("A request for attorney's fees . . . raises legal issues collateral to the main cause of action."). The Court notes that D.N.M.LR-Civ. 54.5 governs certain procedures for requests for attorney's fees:

> (a) **Filing of Motion.** A motion for attorney's fees not brought pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d), must be filed and served within thirty (30) days after entry of judgment. Failure to file and serve

within this time constitutes waiver of a claim to attorney's fees.  Movant must submit a supporting brief and evidence (affidavits and time records). The motion must comply with D.N.M.LR-Civ. 7.

(b)     **Time Records.**  An attorney must keep concurrent time records in 42 U.S.C. § 1983 cases and in other actions where there is a potential for an award of attorney fees.  Time records are kept by the attorney and are not filed until after final judgment unless otherwise ordered.

D.N.M.LR-Civ. 54.5.

**IT IS ORDERED** that: (i) GPG's Motion to Dismiss Leviton's Trade Secret Misappropriation Counterclaim for Lack of Subject Matter Jurisdiction, filed January 10, 2011 (Doc. 73), is granted; (ii) Defendant Leviton Manufacturing Co., Inc.'s Motion to Dismiss Patent Claims and Counterclaims, filed October 11, 2011 (Doc. 144), is granted in part and denied in part; (iii) the Plaintiffs' Motion for Summary Judgment that Leviton Breached Its Implied License, filed March 8, 2012 (Doc. 171), is denied as moot; and (iv) Leviton's Cross-Motion for Summary Judgment and, Alternatively, to Strike Plaintiffs' Motion for Summary Judgment on Plaintiffs' Breach of Implied License Claim, filed March 26, 2012 (Doc. 184), is denied as moot.  The Court will dismiss Leviton Manufacturing Co., Inc.'s trade-secret claim -- Counterclaim III -- for lack of subject-matter jurisdiction.  The Court will accept the parties' agreements to dismiss Leviton Manufacturing's patent-infringement counterclaims -- Counterclaims I and II -- with prejudice.  The Court will accept the parties' agreement to dismiss Counts III through VIII.  The Court will dismiss Count II as moot. The Court will decline to exercise supplemental jurisdiction over Counts I and X.  The Court will deny the Plaintiffs' MSJ and Leviton's MSJ as moot.  The Court will proceed to enter final judgment on the claims asserted in this case.  The Court retains jurisdiction over the request for attorney's fees under 35 U.S.C. § 285.

UNITED STATES DISTRICT JUDGE

*Counsel:*

Roger Michener
Michener Law Firm, LLC
Placitas, New Mexico

      *Attorney for the Plaintiffs*

William F. Long
Ann G. Fort
Joshua D. Curry
Lei Fang
Sutherland Asbill & Brennan, LLP
Atlanta, Georgia

      *Attorneys for Plaintiffs General Protecht Group, Inc.,*
        *SecurElectric Corporation, G-Techt Global Corporation,*
        *and Warehouse-Lighting.com LLC*

Mark J. Rosenberg
Tarter Krinsky & Drogin, LLP
New York, New York

      *Attorneys for Plaintiffs Harbor Freight Tools USA, Inc.*
        *and Central Purchasing, LLC*

Robin L. Brewer
Stefani E. Shanberg
Wilson, Sonsini, Goodrich & Rosati, P.C.
Palo Alto, California

*--and--*

Emil Kiehne
Modrall Sperling Roehl Harris & Sisk, P.A.
Albuquerque, New Mexico

*--and--*

Larry L. Shatzer
Shaun R. Snader
Wilson, Sonsini, Goodrich & Rosati, P.C.
Washington, D.C.

*Attorneys for Defendant Leviton Manufacturing Co.*